## The Ocean Insurance Company, Plaintiffs in error, *vs.* William Polleys, Defendant in error.

The settled construction given by the Supreme Court to the 25th section of the judiciary act of 1789, is, that to bring a case within the reach of that section, it must appear on the face of the record of the state Court, either by express terms, or by clear and necessary intendment, that the question of the construction of a clause of a statute of the United States, did actually arise in the state Court; not that it might have arisen or have been applicable to the case; and that the question was actually decided ; not that it might have been decided by the state Court against the title, right, privilege, or exemption, set up by the party.   If, therefore, the decision made by the state Court upon the face of the record, is entirely consistent with the construction of the statute contended for by the party appellant,' no case is made out for the exercise of the appellate jurisdiction of the Supreme Court.

In the exercise of the appellate jurisdiction of the Supreme Court on the decisions of state Courts, the Supreme Court is not at liberty to resort to forced inferences and conjectural reasonings, or possible, or even probable suppositions of the points raised and actually decided by those Courts.   The Court must see, plainly, that the decision was either directly made of some matter within the purview of the 25th section of the act of 1789 ; or that the decision could not have been such as it was, without necessarily involving such matter.

It is to the record, and to the record alone, that the Supreme Court can resort to ascertain its appellate jurisdiction, in cases decided in the Supreme or Superior Court of a state.

A policy of insurance on a vessel sailing under a register which has been obtained without conforming to the requisitions of the laws of the United States relative to the registry and enrolling of vessels of the United States is not void ; and an action may be maintained on such a policy to recover a loss sustained by the assured.   The policy may not have been designed to aid, assist, or advance any unlawful purpose; and was a lawful contract in itself, and only remotely connected with the use of the certificate of registry.   There are cases in which a contract may be valid, notwithstanding it is remotely connected with an independent illegal transaction ; which, however, it is not designed to aid or promote.   Suppose a vessel had been actually forfeited for some antecedent illegal act, are all contracts for her future employment void ; although there is no illegal object in view, and the forfeiture may never be enforced ?

IN error to the Supreme Judicial Court of the state of Maine.

The original action was assumpsit on a policy of insurance, dated July 17, 1833, upon the schooner called the Mary, and owned by said Polleys, for the term of one year, commencing on the 11th of said July—sum insured $3,000.   The schooner during the said year, on June 10, 1834, was totally lost.   The general issue was pleaded.

It appeared on the trial, that a sloop was built in 1816, and was enrolled by the name of the Sophronia, and was again enrolled in the customhouse, in Portland, by the same name, March 24th, 1822. That schooner Mary was built upon the keel, floor timbers and naval timbers of the said sloop Sophronia, and the size enlarged nearly twelve tons, and the name of the Mary given to her after being so enlarged, and that this was known to the defendants at the time of executing the policy; and that the certificate of Mark Leavit was procured by said Polleys, and presented to the customhouse to obtain the enrolment of the schooner Mary, without any fraudulent intent to deceive or defraud, but with a fair and honest intention, as the jury believed.   But that the enrolment of the sloop

Sophronia was not first surrendered and delivered up at the custom-house before the issuing of the enrolment of the Mary, which was on the 3d day of June, 1833.

The counsel for the original defendant, on the trial, objected to the admission in evidence of the enrolment of June 3, 1833, as contrary to the laws of the United States; but the judge overruled the objection, and it was admitted: and the counsel further insisted that schooner on the voyage in which she was lost, was sailing under circumstances rendering her liable to forfeiture for a violation of the laws of the United States, and that therefore, a policy on a vessel pursuing such a voyage was not valid, or legal and binding; but the judge also overruled this objection as insufficient to bar the action. The cause was thereupon submitted to the jury, who returned a verdict for the original plaintiff.

The defendant prosecuted this writ of error. The case was argued by Mr. Fletcher for the plaintiffs, and by Mr. Webster for the defendant.

For the plaintiff, the following points were submitted.

1. That the certificate of enrolment of the schooner named in the policy of insurance, enrolled by the name of the Mary, was procured by said Polleys but a short time before the commencement of the year for which she was insured, knowingly in direct violation of the statute of the United States then in full force; of which statute he was bound to take notice.

2. That the enrolment of said schooner thus procured by said Polleys, by a new name, was entirely illegal, and wholly null and void.

3. That said Polleys, by not delivering up the original certificate of registry, incurred a penalty of five hundred dollars; and by being registered by a new name, the schooner lost her national character, and could no longer be deemed a ship or vessel of the United States.

4. That said certificate of enrolment was knowingly used for the schooner on the voyage upon which she was lost during the year for which she was insured, she not being then actually entitled to the benefit thereof. That such use of said enrolment was illegal, and a direct violation of the twenty-seventh section of the act aforesaid; and the schooner was thereby rendered liable to forfeiture.

5. That a policy of insurance on a vessel prosecuting a voyage under a false and unlawful enrolment and certificate thereof, and in violation of a statute of the United States, in the manner aforesaid, is not a binding contract; and cannot be enforced in a Court of law.

6. That the said certificate of registry being a void, useless, and illegal document, the schooner while sailing under its pretended sanction, was not sea-worthy; and that the implied warranty of sea-worthiness was on that account violated.

[The Ocean Insurance Company vs. William Polleys.]

Mr. Fletcher, for the plaintiffs in error, said, that on the question whether this Court had a right to entertain jurisdiction of this writ of error, to the Supreme Judicial Court of Maine, all the cases were collected in the opinion of this Court, in the case of Crowell vs. Randal, 10 Peters.

To give the Court jurisdiction under the 25 section of the judiciary act of 1789, by which a writ of error is authorized to the Supreme Court of the state, the plaintiff must claim some privilege or exemption under an act of Congress, which has been denied to him by a misconstruction of the act. There is no necessity that the claim shall appear on the face of the record; if it appear that, unless by a misconstruction of the act, the Court could not have made the decision, or given the judgment complained of.

The record in the case before the Court, shows more than is required by the decisions of this Court. The counsel for the defendants in the State Court, now the plaintiffs in error, objected to the admission of the enrolment of the vessel insured, in evidence, as the enrolment was contrary to the laws of the United States, and the vessel was liable to forfeiture. A vessel sailing in violation of the law of the United States, could not be insured by a valid policy. The record shows that this position was denied, and thus the jurisdiction exists in this Court.

The law applicable to the facts of this case is clear and explicit. By the act of Congress of December 31, 1792, 2 Laws U. S. ch. 146, when a ship or vessel is altered or increased in burthen, or changed from one denomination to another, she must be registered anew, but by the same name, and the original register must be delivered up; a penalty of five hundred dollars is imposed for the violation of this provision of the law: and by the twenty-seventh section of the act, using a register, falsely or fraudulently obtained, if used knowingly, forfeits the vessel. The act of February 8, 1792, puts coasting vessels under the same regulations as those provided by the act of December 31, 1792, "concerning the registering and recording of ships and vessels." By a circular letter from the Secretary of the Treasury, providing for the execution of these laws, the collector is prohibited licensing, or enrolling, or registering a ship or vessel, unless her previous register is delivered up.

The registering of vessels has been required by all commercial nations. The object of those regulations is the encouragement of ship building, and to prevent frauds on individuals. 3 Kent's Commentaries, 139. The conduct of the defendant in error was contrary to the policy of the law, and in violation of it. No justification is offered for this act: and it is certain that if the collector had known the proceeding, he would not have given the register. By the register, a character was given to the vessel to which she was not entitled. She was, in fact, liable for foreign duties.

What are the legal consequences of such proceeding? These are stated in the points submitted to the Court. The schooner was entitled to a register as the Sophronia, not as the Mary; the register

originally granted to her should have been delivered up to be cancelled, and when registered anew, her enlarged capacity, and the other alterations which had been made in her, should have been stated. The defendant in error was answerable for those violations of the law: and he cannot be permitted to recover on a contract growing out of this conduct.

There is a penalty of five hundred dollars imposed for these violations of the law. Imposing a penalty is equivalent to an express prohibition of the act for which the penalty is imposed.

Knowingly using a false register subjects the vessel to forfeiture. Knowing, as meant by the statutes, is a knowledge of the facts, and does not require a knowledge of the law. In a former act of Congress, "fraudulently using" a false register, was the language of the statute; but the act of 1792, contains the term "knowingly." Cited, Carthew's Rep. 252. 1 Kent's Commentaries, 467. 1 Binney's Rep. 10. 5 Barn. and Ald. 335.

The contract not being binding, cannot be enforced in a Court of law. 1 Kent's Commentaries, 291. The Mary was constantly violating the laws of the United States. Every voyage was such a violation, and no policy of insurance could protect her in such proceeding. 12 East, 303. 1 Bos. and Pull. 272. 1 Marshall on Insurance, 52. 6 Mass. Rep. 101. 1 Emerigon, 542, ch. 12, sec. 14. 2 Bos. and Pull. 35. 2 Douglas's Rep. 467. 7 Term. Rep. 187. 1 Taunton Rep. 241. The Julia, 1 Cranch, 181. The Aurora, 8 Cranch, 203. The Hiram, 1 Wheat. 440. 15 Johns. Rep. 25. 12 East, 200. 17 Mass. 258. 2 Bos. and Pull. 370. 1 Maule and Selwyn, 593.

The implied warranty of sea-worthiness was violated by the vessel sailing with false papers. The loss from another cause has no influence on this principle. The vessel was insured as the Mary, when her real name was Sophronia. This is a breach of warranty. Cited, 6 Mass. Rep. 220. 7 T. Rep. 105. 4 Taunton, 373. 3 Kent's Commentaries, 257. Marshall on Insurance, 221.

Mr. Webster, for the defendants in error, objected to the jurisdiction of the Court. It does not appear that any statute of the United States was misunderstood. Suppose the Court had said the vessel is forfeited, but the insurance is valid; does this give jurisdiction? The enrolment, although imperfectly made, was in evidence. Has the Superior Court of Maine decided on the effect of an act of Congress? This does not appear, because one of the parties has a defence connected with the statute. It does not give this Court jurisdiction to revise the decision of the Court before which the defence was made. If the state Court have decided wrong on the facts, yet it does not appear the statute has been misinterpreted.

The enrolment, although irregularly obtained, was a legal paper. The parties could be visited by a penalty, but this was not a forfeiture of the vessel. To maintain that a contract made for the protection of the property of the owner of such a vessel is void, it must

be shown that, by the manner of obtaining the enrolment, the party was deprived of any and all property in the vessel; or that the contract was made in aid of an illegal act. The case agreed exempts the assured from all fraud.

The contract of insurance was legal. It had nothing to do with the act of the owner in obtaining an enrolment. It stood separate and apart from all the former transactions. It was not like a contract of insurance on a vessel carrying an enemy's license, where the license makes the property enemies' property.

In reply to the cases cited by the counsel for the plaintiff in error, Mr. Webster said, they all established that the contract was itself unlawful. In such a case, a Court of law will give no assistance to enforce such an agreement.

But the acts of Congress did not make the forfeiture of the vessel, under such circumstances, absolute, even if any forfeiture could be enforced. Proceedings against her were necessary. The government could alone enforce the law, and until this was done, the sailing of the vessel was lawful. The power to remit for any penalty or forfeiture, under such circumstances, is given by the statute. Thus, until the government had fully manifested its claim, and had refused a remission, no one could allege any thing against the vessel.

The Mary was a registered vessel of the United States, and had a right to protection as such. If a revolt had been committed on board of her, it would have been punished. If she had been attacked by a foreign military force, the government of the United States would have interfered. Cited, 13 Pickering's Rep. 518. 15 East, 364. 4 Taunton, 589. 13 Mass. Rep. 589. 6 Greenleaf's Reports, 68.

Mr. Justice STORY delivered the opinion of the Court.

This is a writ of error to the Supreme Judicial Court of the state of Maine. The original action was assumpsit on a policy of insurance, dated the 17th of June, 1833, whereby the Ocean Insurance Company insured three thousand dollars on the schooner Mary, owned by Polleys, at sea or in port, for the term of one year, commencing the risk on the 11th of July, 1833, at noon, and ending the 11th of July, 1834, at noon. The schooner was totally lost by the perils of the sea on the 10th of June, 1834, while the policy was in force. At the trial, on the general issue, it appeared in evidence that a sloop was built in 1816, and enrolled by the name of Sophronia, and was again enrolled in the customhouse in Portland, by the same name on the 24th of March, 1822. The schooner Mary was built upon the keel, floor timbers, and naval timbers of the said sloop Sophronia, the size was enlarged nearly twelve tons, and the name of Mary was given to her after being so enlarged; and this was known to the Insurance Company at the time of executing the policy. A certificate of one Mark Leavit was procured by Polleys, and presented to the customhouse to obtain an enrolment of the schooner Mary, without any fraudulent intent to deceive or defraud, but with

fair and honest intentions, as the jury believed. But the enrolment of the Sophronia was not first surrendered and delivered up at the customhouse before the issuing of the enrolment of the Mary, on the 3d of June, 1833. Upon these facts, which appear upon the bill of exceptions taken at the trial, the counsel for the Insurance Company objected to the admission in evidence of the said enrolment of the Mary of the 3d of June, 1833, as contrary to the laws of the United States; but the Judge who sat at the trial overruled the objection, and the enrolment was admitted. The same counsel further insisted that the said schooner on the voyage on which she was lost, was sailing under circumstances rendering her liable to forfeiture for a violation of the laws of the United States; and that therefore a policy on a vessel pursuing such a voyage, was not valid, or legal and binding. But the said Judge also overruled this objection as insufficient to bar the action. Other points arose at the trial, upon which, however, it is unnecessary for us to dwell; because they are in no shape cognizable by this Court in the exercise of its appellate jurisdiction over the judgments and decrees of the state Courts, under the 25th section of the judiciary act of 1789, ch. 20. The jury found a verdict for the plaintiff, (Polleys,) which was confirmed by the whole Court; and judgment passed thereon accordingly for him.

Two questions have been argued before us. The first is, whether upon the face of the record any case is made out for the exercise of the appellate jurisdiction of this Court under the 25th section of the act of 1789, ch. 20. The next is, whether the state Court has in fact misconstrued the laws of the United States, upon the points in controversy at the trial to the prejudice of the Insurance Company.

In our judgment it is wholly unnecessary to consider the last question, because we are of opinion that upon the face of the record no case is shown for the exercise of the appellate jurisdiction of this Court. The only clause of the 25th section of the judiciary act of 1789, ch. 20, conferring this appellate jurisdiction, which is applicable to the present case, is, that where there is drawn in question in the state Court the construction of a clause of a statute of the United States, and the decision of the state Court is against the title, right, privilege or exemption set up or claimed by either party, under that clause of the statute; the settled construction of this Court is, that to bring any case within the reach of the 25th section, it must appear upon the face of the record of the state Court, either by express terms, or by clear and necessary intendment, that the question did actually arise in the state Court, not that it might have arisen, or have been applicable to the case; and that the question was actually decided, not that it might have been decided by the state Court, against the title, right, or privilege, or exemption set up by the party. If therefore the decision made by the state Court is upon the face of this record entirely consistent with the construction of the statute contended for by the party appellant, no case is made out for the exercise of the appellate jurisdiction of this Court.

[The Ocean Insurance Company vs. William Polleys.]

Let us now apply this doctrine to the circumstances of the present case. The first objection was to the admission of the enrolment of the Mary as evidence to the jury upon the ground that it was "contrary to the laws of the United States;" meaning, undoubtedly, that it was obtained contrary to the requirements of the act of Congress concerning the registering and recording of ships or vessels, passed on the 31st of December, 1792, ch. 45. That act, in the 14th section, provides, among other things, that when any ship or vessel which shall have been registered pursuant to the act, shall be altered in form or burden by being lengthened or built upon, or from one denomination to another, by the mode or method of riging or fitting, the ship or vessel shall be registered anew by her former name; otherwise she shall cease to be deemed a ship or vessel of the United States: and upon her being registered anew, the former certificate of registry is to be delivered up to the collector: and if not so delivered up, except where it is destroyed or lost or unintentionally mislaid, the owner is made liable to the forfeiture of five hundred dollars. Now, it is observable, that the present policy contains no warranty or representation of the national character of the Mary; and therefore the only assignable reason for offering the new enrolment, (as it is called,) meaning the new certificate of registry, in evidence was to establish the ownership of the vessel to be in Polleys. For this purpose it was clearly admissible, however irregularly or wrongfully this enrolment may have been obtained at the customhouse. The Court, might, therefore, very properly have admitted the paper in evidence for this purpose, and, for aught that appears on the record, actually did so, without in the slightest degree contesting that it had been obtained contrary to the laws of the United States. In this view, as a matter of evidence proper for the consideration of the jury on the question of ownership, it is clear, that the decision does not fall within the appellate jurisdiction of this Court, under the 25th section of the act of 1789, already referred to.

Then as to the other point. The objection made by the counsel for the Insurance Company was, that the schooner (Mary,) on the voyage on which she was lost, was sailing under circumstances rendering her liable to forfeiture for a violation of the laws of the United States; and that therefore a policy on a vessel pursuing such a voyage was not valid, or legal and binding. But the Judge also overruled this objection, as insufficient to bar the action. The objection was founded on the 27th section of the ship registry act of 1792, ch. 45, above referred to; which declares, that if any certificate of registry or record shall be fraudulently or knowingly used for any ship or vessel not then actually entitled to the benefit thereof, according to the true intent of this act, such ship or vessel shall be forfeited to the United States, with her tackle, apparel, and furniture. The objection then, as insisted on by the counsel for the Insurance Company, involved two distinct propositions. The first was, that the schooner was sailing on the voyage under circumstances which rendered her liable to forfeiture. The second was, that the policy on

her was therefore void. Now, the first might have been most fully admitted by the Court, and yet the second have been denied, upon the ground that the policy was a lawful contract in itself, and only remotely connected with the illegal use of the certificate of registry; and in no respect designed to aid, assist, or advance any such illegal purpose. We all know that there are cases where a contract may be valid, notwithstanding it is remotely connected with an independent illegal transaction, which, however, it is not designed to aid or promote. The case of Armstrong *vs.* Toler, 11 Wheat. R. 258, presented a question of this sort, and was decided in favour of such a contract. But cases might easily be put, where the doctrine itself would admit of a far more simple and easy illustration. Suppose the Mary had been repaired in port, and the shipwrights had known the circumstances under which she had obtained the new certificate of registry; would they in consequence of such knowledge alone, have lost their title to recover for their own work and labour? Suppose a vessel had been actually forfeited by some antecedent illegal act, are all contracts for her future employment void; although there is no illegal object in view, and the forfeiture may never be enforced?

In order to bring the present case within the jurisdiction of this Court, it must clearly appear on the face of the record that the state Court did decide against the construction of the laws of the United States, insisted on by the Insurance Company: for if the Court did decide in favour of that construction, and yet held the policy valid upon other grounds consistently with that decision, we have nothing to do with the latter point, and have no right to inquire, whether it was a just application of the general principles of commercial law, or not. Now, so far is it from appearing on the face of the record, that the state Court decided against the construction of the laws of the United States, insisted on by the Insurance Company; that the contrary may be fairly inferred from the language of the Court in overruling the objection. The objection was overruled as "insufficient to bar the action;" that is, the action on the policy was still maintainable, notwithstanding the Mary "was sailing under circumstances rendering her liable to forfeiture for a violation of the laws" of the United States.

In the exercise of the appellate jurisdiction of this Court over the decisions of state Courts, we are not at liberty to resort to forced inferences and conjectural reasonings, or possible or even probable suppositions of the points raised and actually decided by those Courts. We must see plainly that the decision was either directly made of some matter within the purview of the 25th section of the act of 1798; or that the decision could not have been what it was without necessarily involving such matter. In the present case we can arrive upon the record at no such conclusion. The consequence is, that the cause must be dismissed for want of jurisdiction.

We have been furnished with a copy of the opinion of the learned Judges in the state Court in this very case; and we are gratified in

[The Ocean Insurance Company *vs*. William Polleys.]

finding that it abundantly confirms the deductions which we have drawn from the record.    But it is proper to add, that that opinion, if it had been otherwise, could not have had any influence upon our present opinion; since it constitutes no part of the record; and it is to the record, and the record only, that we can resort to ascertain our appellate jurisdiction in cases of this sort.

The writ of error is accordingly dismissed for want of jurisdiction.