# APPENDIX

## No. I.

SUSAN DECATUR, PLANTIFF IN ERROR, *vs.* JAMES K. PAULDING, SECRETARY OF
THE NAVY, DEFENDANT IN ERROR.

Opinion of Mr. Justice BALDWIN.

I concur with the Court in not interfering with the proceeding of the Circuit Court, refusing the mandamus prayed for by the relator, on the ground that she is not entitled to the benefits of the general pension law of the 3d March 1837, and of the special resolution passed on the same day in her favour. My opinion is not founded on any special proceedings in the passage of the law and resolution, which have been referred to from the journals of the two houses, but from the intention of Congress apparent in the provisions of the two acts, not to give cumulative pensions, and the general principle of law, that where provision is expressly made by law for a particular case, it does not come within the general provisions of another law, which may embrace it by its general terms. 4 Story, 2542. 2556. Had it been the intention to give both, the presumption is, it would have been so declared; and the nature of the pensions, one being 'or life, and the other for five years and arrearages, shows the intention to be contrary, and to give her the election which she should claim: she has yet that election; as it appears from the return to the rule, and the affidavits in the case, that the receipt of the pension under the general law, was, under such circumstances, no waiver of the pension specially given to her, should she now elect to take it, in preference to the general provision under the contemporary law.

But I cannot concur in opinion with the Court, on the grounds on which they affirm the judgment, for two reasons. 1. That the Circuit Court had jurisdiction of the case; and 2. That this Court had not jurisdiction: and in order to ascertain whether the Circuit Court had jurisdiction, it is necessary to ascertain what is jurisdiction, as contradistinguished from its exercise: for we all agree that if the jurisdiction exists, there was no error in refusing the mandamus prayed for.

"The power to hear and determine a cause is jurisdiction; it is 'coram judice,' whenever a case is presented which brings this power into action; if the petitioner states such a case in his petition that, on a demurrer, the Court would render judgment in his favour, it is an undoubted case of jurisdiction; whether on an answer denying and putting in issue the allegations of the petition, the petitioner makes out his case, is the exercise of jurisdiction, conferred by the filing of a petition, containing all the requisites, and in the manner prescribed by law." 6 Pet. 709. The objection to jurisdiction "must be considered and decided, before any Court can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction. It is the power to hear and determine the subject matter in controversy between parties to the suit, to adjudicate, or to exercise any judicial power over them; the question is whether on a case before a Court, their action is judicial, or extra-judicial, with, or without the authority of law, to render a judg-

599

ment, or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the Court has jurisdiction; what shall be adjudged or decreed between the parties, and what is the right of the case, is judicial action by hearing and determining it." 12 Pet. 718.

If the Court can act on any one subject of the petition, any matter, "on which the plaintiff asks its interposition, it must be retained; so that the true inquiry is, not as to the extent, but the existence of any.jurisdiction," (Ib. 732;) if any case is made out for its exercise, (13 Pet. 162;) if any relief can be given we must proceed. 8 Pet. 536. 10 Pet. 228.

" Where a Court has jurisdiction, it has a right to decide every question which occurs in the cause: and whether its decision be correct or otherwise, its judgment until reversed is binding in every other court. But if it act without authority, its judgments and orders are nullities. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers. 1.Pet. 340. S. P. 2 Pet. 163—169. 3 Pet. 203.

When a Court of general civil jurisdiction gives judgment for a debt, or confirms an act directed to be done, neither the existence of the debt, or validity of the act done, can be afterwards questioned, unless on appeal or writ of error: their power to act upon the subject, to judge whether the debt is due or not, is a question always open, collaterally; but if they can act upon it judicially, their errors however apparent, their proceedings, inverso ordine, or contrary to law, have no effect on their jurisdiction, or the validity of its exercise, till an appellate power shall reverse them. 10 Pet. 472—476. S. P. 2 Pet. 167. 169.

If the judicial function has been exercised by lawful authority, the Court has jurisdiction; otherwise their acts are coram non judice. Ib. 474.

The judgment of a competent Court, "withdrawn by law from the revision of this," is a sufficient cause to detain a prisoner; we cannot "look beyond the judgment, and re-examine the charges on which it was rendered."

The judgment of a Court of Record, whose jurisdiction is final, is as conclusive on all the world as the judgment of this Court would be. It is as conclusive on this Court, as it is on other Courts. It puts an end to inquiry concerning the fact, by deciding it." 3 Pet. 202, 203. S. P. 7 Wheat. 42—45.

The Circuit Court for the District of Columbia is a Court of record, having general jurisdiction over criminal cases. An offence cognisable in any Court, is cognisable in that Court. If the offence be punishable by law, that Court is competent to inflict the punishment. The judgment of such a tribunal has all the obligation which the judgment of any tribunal can have. To determine whether the offence charged in the indictment be legally punishable or not, is among the most unquestionable of its powers and duties. The decision of the question is the exercise of jurisdiction, whether the judgment be for or against the prisoner, the judgment is equally binding in the one case, as in the other; and must remain in full force, unless reversed regularly by a Superior Court, capable of reversing it. If this judgment be obligatory, no Court can look behind it. If it be a nullity, the officer who obeys it is guilty of false imprisonment." Ib. 203 to 209, passim.

These principles draw the line between jurisdiction, and its exercise, so clearly, as to supersede the necessity of any further inquiry what they are respectively; leaving no open question, except their application to this case, which is an application, or motion for a mandamus to the Secretary of the Navy, to compel him to pay to the relator, or to issue his warrant for the pensions claimed by her, under the act and resolution of Congress, of the 3d March, 1837.

The first proceeding in the Circuit Court was on a petition and affidavit in the proper form, praying for a rule to show cause why a mandamus should not issue; to which a return having been made: it was adjudged to be sufficient, and the motion for the mandamus was refused to be granted. Did then the petition, affidavit, &c., present a case for the exercise of the judicial power of the Circuit

Court, or was it a matter coram non-judice, is the question; for if they could inquire into it as judges, they had power to grant the rule, however erroneously, illegally, or even oppressively, they might act in doing it. In that stage of the cause, the proceeding was on the case as made out by the relator, which might justify the rule; though on the return of the respondent, there might be conclusive reasons for proceeding no further; but as the question of jurisdiction is on the first step, all questions which follow it are matters of discretion in its exercise, so that the only inquiry is, whether the case is "of judicial cognisance." 12 Pet. 623.

In ascertaining the jurisdiction of the Circuit Court of this District, I shall confine myself to the opinion of this Court in the United States *vs.* Kendall, in which it was decided, that the case was proper for a mandamus, and that that Court had power to issue it. After a review of former decisions, they proceed :—" The result of these cases clearly is, that the authority to issue the writ of mandamus to an officer of the United States, commanding him to perform a specific act required by a law of the United States, is within the scope of the judicial powers of the United States under the Constitution." 12 Pet. 618.

" Congress has the entire control of the District, for every purpose of government; and it is reasonable to suppose, that in organising a judicial department here, all judicial power necessary for the purposes of government would be vested in the Courts of justice. The Circuit Court here, is the highest Court of original jurisdiction; and if the power to issue a mandamus in a case like the present exists in any Court, it is vested in that Court." Ib. 619.

" There can be no doubt, but that in the state of Maryland a writ of mandamus might be issued to an executive officer, commanding him to perform a ministerial act required of him by law; and if it would lie in that state, there can be no good reason why it should not lie in this District, in analogous cases." Ib. 621. The Court then decide, that the Circuit Court of the District has the power to issue a mandamus, under the first, third, and fifth sections of the act of 27th February, 1801; (Ib. 622;) and in applying the law to the case before them, say, "There was no want of jurisdiction then as to the person; and as to the subject matter of jurisdiction, it extends, according to the language of the act of Congress, to all cases in law or equity. This of course means cases of judicial cognisance. That proceedings on an application to a Court of justice for a mandamus, are judicial proceedings, cannot admit of a doubt; and that this is a case in law is equally clear." Ib. 623, 624.

The Court then construe the third section of the act of the 27th February, 1801, 3 Story, 2089, "as if the eleventh section of the act of 13th February, 1801, had been incorporated into it," by which this section declares, "that the Circuit Courts shall have cognisance of all cases in law or equity, arising under the Constitution and laws of the United States, and treaties made, or which shall be made under their authority; which are the very words of the Constitution, and which is of course a delegation of the whole judicial power, in cases arising under the Constitution, laws, &c.; which meets and supplies the precise want of delegation of power, which prevented the exercise of jurisdiction, in the case of M'Intire *vs.* Wood, and M'Cluny *vs.* Silliman; and must, on the principles which governed the decision of the Court in those cases, be sufficient to vest the power in the Circuit Court of this District." 12 Pet. 626. Its judgment, awarding a peremptory mandamus against the Postmaster-general, was accordingly affirmed. Vide 6 Wheat. 600.

As the authority of that case has been recognised in the opinion of the Court delivered in this, it must be considered as settled, that the Circuit Court of this District, having the cognisance of all cases in law or equity, and being a Court of general jurisdiction, is invested with the whole judicial power of the Constitution, in relation to writs of mandamus; which is jurisdiction, if judicial cognisance of the person, the subject matter, and the power to hear and determine, is jurisdic-

tion; and of consequence, that Court has a right to decide every question which arises in the cause, when their first step is judicial, under the authority of law. 1 Pet. 340.

It is admitted that if the law had required the Secretary of the Navy to do a ministerial act, the jurisdiction of that Court would be unquestionable; not only to grant the rule to show cause, to issue the mandamus, but enforce it by ultimate process, if no sufficient cause is shown to the contrary in the return: which appears to me to be also an admission, that that Court may and must judicially inquire whether the act enjoined by law and refused to be performed, is ministerial, executive, or discretionary, in its nature. It is of the essence of the jurisdiction of any, and every Court of record, which is authorized to decide on any class of cases; to inquire whether in the one before them, it is of that class; whether it is proper for the exercise of their power; and how it shall be exercised: otherwise its action is abortive, and its proceeding by the most solemn consideration is a nullity, if their jurisdiction is to be tested by the judgment which they shall render.

If a decision in this case, that a mandamus shall not issue, is not a nullity, a contrary one cannot be; for such a decision is the result of a judicial inquiry, which the law authorizes to be made; whether the rule shall be granted, and the proceedings be followed up to consummation, or not: the law authorizes this inquiry into the facts of the case, and the judgment of the Court puts an end to the " inquiry concerning the fact, by deciding it." To determine whether the facts of the case are legally sufficient to award the process o' the Court, " is among the most unquestionable of its powers and duties." 3 Pet. 203. The decision of these questions is the exercise of jurisdiction, whatever judgment may be given; and if the principles laid down in the case of Kendall, are law in this, the result is irresistible, that the Court which can decide the facts, and law, on which the granting or refusing a mandamus depends; has jurisdiction to hear, determine, and render a judgment on the application; which is conclusive till reversed.

When this Court has most solemnly adjudged, that the authority to issue a mandamus " is within the scope of the judicial power of the United States, under the Constitution;" that if it exists in any Court, it is vested in the Circuit Court of this District: and that the power in that Court to exercise this jurisdiction, " results irresistibly" from the act of 1801: I am wholly unable to reconcile the conclusion formed in this case, with the principles and premises established in that; or to view the two cases in connection on this point, without the conviction, that they are entirely repugnant, as well in principle as in their consequences.

It is the settled law of this Court, that it cannot issue a mandamus to a public officer, in virtue of its original jurisdiction, (1 Cranch, 174, &c. 12 Pet. 621;) that this Circuit Court by its original, general jurisdiction, has been invested with this power; that it exists in no other Court; is within the scope of the judicial power of the United States; and, consequently, exclusively within the judicial cognisance of that Court. An award of a peremptory mandamus to the head of one executive department, has been affirmed as an act within the jurisdiction of the Court, and is a case proper for its exercise; because the thing commanded to be done was ministerial in its nature. 12 Pet. 618. 626.

A decision of the same Court, refusing a mandamus to another head of an executive department, has also been affirmed, on the ground that that Court had no jurisdiction of the case, because the act which that officer was called on to perform, was of an executive, discretionary nature, and consequently not ministerial; from which no other conclusions can result, than these:—

First, That the Court, which has exclusive, original jurisdiction, to award a mandamus to a head of department, in any case, the only Court in whom this power is invested, has neither jurisdiction, or power to inquire judicially, whether

the act which is the subject of the application for a mandamus, is of that nature as to justify the awarding of this writ, and of consequence, cannot decide whether it shall issue or not, for if it can so inquire and decide, that is necessarily the exercise of jurisdiction.

Second, That the only Court, which has any original jurisdiction over the person, and subject matter, to which the application for the mandamus applies, is incompetent to hear and determine it on its merits; if this Court, in its exercise of appellate power on a writ of error, shall be of opinion, that the Circuit Court ought not to award the mandamus in the case before them, on the sole ground that the act complained of was not ministerial, and that therefore the subject matter was coram non judice, in that Court.

Third, Whence it follows, that this Court, in virtue of its appellate jurisdiction, can alone exercise the judicial power of the United States, to hear and determine a case on a mandamus, which turns on the question, whether the act sought to be commanded to be done, was of a ministerial nature, a proper subject for the writ, or of an executive, or discretionary character, which made it improper to issue it. In other words, that the award of a mandamus, in a case where its award would be erroneous, was an usurpation of the judicial function, a nullity, had it been made in this case; which conclusions can, in my opinion, be drawn only by overlooking the settled distinction between jurisdiction, and its erroneous exercise.

Though it matters not for the purposes of this case, on what ground the judgment below is affirmed, a view of the consequences which must result from a denial of jurisdiction under the opinion of this Court, must lead to the most serious considerations; for the want of original jurisdiction leaves a judgment rendered in a case coram non judice, as utterly null and void, when objected to in a collateral action, as it is after a reversal on error. Nay more so, where the nullity arises from an intrinsic want of power, it requires not the action of an appellate Court, to authorize all the world to disregard it, to oppose, even by force, the officer who attempts to execute any order or judgment, which the Court may make or render, and makes him liable to an action or indictment, if he actually executes it.

Now let it be supposed, that in enforcing a proceeding by mandamus, the marshal or the defendant is maimed; an indictment is found; it must be tried in the Circuit Court of this District; they decide that they had jurisdiction in the mandamus, and power to issue the attachment; that the marshal had lawful authority to execute it by force, if resisted, convict, sentence, and imprison the defendant; the hands of this Court are paralysed by its own decisions.

The sentence of the Circuit Court is final, absolute, and conclusive of the facts, as well as the law; it is withdrawn from any revision by this Court, by habeas corpus, (7 Wheat. 42. 2 Pet. 202. 209;) by writ of error, (3 Cranch, 170—172. 174;) or mandamus, (3 Dall. 42. 13 Pet. 290. 408;) the judgment "is as conclusive on all the world, as the judgment of this Court would be, as conclusive on this Court as on other Courts;" (2 Pet. 203;) though this Court should be of opinion, that in law the marshal ought to have been convicted. Ib. 209.

"An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity, if the Court has general jurisdiction of the subject, although it should be erroneous. Ib. Let this principle be applied to a mandamus, according to the opinion in Kendall's case, it will be manifest, that the Circuit Court, having original, exclusive, and general jurisdiction in this case, had, if that case remains authoritative, full authority to exercise it, by any order, judgment, or process, which they deemed to be called for, in the exercise of their discretion, on the exigencies of the cause. It does not come within any power of this Court, by looking to consequences, to remove any restrictions on its appellate jurisdiction, or to exercise it where it is not clearly given; it may decide on the errors of inferior Courts, in assuming, or exercising their powers; but if it is admitted that they have jurisdiction over the person and subject matter, and

power to issue the process in question, the power of this Court is restricted to a revision of the exercise of those powers. "Whether such a restriction be not inconsistent with sound, public policy, and does not materially impair the rights of other parties, as well as of the United States, is an inquiry deserving of the most serious attention of the legislature. We have nothing to do, but to expound the law as we find it; the defects of the system must be remedied by another department of the government." 3 Wheat. 309. "We are entirely satisfied to administer the law as we find it."

"The argument of inconvenience has been pressed upon us with great earnestness. But where the law is clear, this argument is of no avail; and it will probably be found, that there are also serious inconveniences on the other side. Wherever power is lodged, it may be abused. But this forms no solid objection to its exercise. Confidence must be reposed somewhere; and if it should be abused, it will be a public grievance, for which a remedy may be applied by the legislature, and is not to be devised by Courts of justice." 7 Wheat. 45.

"The question whether an offence was or was not committed, that is, whether the indictment did or did not show that an offence had been committed, was a question which that Court was competent to decide." 3 Pet. 206. So, on a motion for a mandamus, the question is whether on the petition and affidavits on the part of the relator, a rule should be granted to show cause, or the writ be awarded, or refused.

"The cases are numerous, which decide that the judgments of Courts of Record having general jurisdiction of the subject, although erroneous, are binding until reversed." "This acknowledged principle seems to us to settle the question now before the Court. The judgment of the Circuit Court in a criminal case, is of itself evidence of its own legality, and requires for its support no inspection of the indictments on which it is founded. The law trusts that Court with the whole subject, and has not confided to this Court the power of revising its decisions. We cannot usurp that power, by the instrumentality of the writ of habeas corpus. The judgment informs us that the commitment is legal, and with that information it is our duty to be satisfied." Ib. 207. "Without looking into the indictments, &c., we are unanimously of opinion, that the judgment of a Court of general criminal jurisdiction justifies this imprisonment," &c. (though as this Court had declared, "that Court has misconstrued the law, and has pronounced an offence to be punishable criminally, which, as we may think, is not so,") and "that the writ of habeas corpus ought not be awarded." Ib. 209. These acknowledged principles must apply to the judgment or order of the former Court on a mandamus, as it has the same original, general, and exclusive jurisdiction in those cases, as it has on criminal offences; the judgment is of course equally evidence of its own legality, and conclusive till reversed; the only difference between the two classes of cases, is dependent on the question, whether this Court has power to revise a judgment on a mandamus, either by a writ of habeas corpus, or a writ of error.

On the application for a habeas corpus, this Court must see that there is a judgment of a Court, having acknowledged power to act in the case; all inquiry thus ceases, as this Court cannot look beyond the judgment; if they inspect the petition, &c., to ascertain whether the case presented is one proper for the exercise of original jurisdiction, they usur it, by placing themselves in the seat of the Circuit Court, in exercising the precise function, which has been delegated to that Court, in the plenitude of judicial power. On the same ground this Court might revise the judgment of a Circuit Court held in a state, on an action, or indictment, by habeas corpus, and discharge the defendant from imprisonment: not because the Court below had not power to hear, determine, or render a judgment; but because on the case as it appeared by looking beyond the judgment, it ought to have been for the defendant. Such power has never been asserted or exercised in relation to any Circuit Court; it has been solemnly denied as to the Court of this Dis-

trict, which has "larger powers, in cases of mandamus, than any other Court." 12 Pet. 615. 626. If a writ of habeas corpus does not lie on its judgments in criminal, and other civil cases, it cannot lie on a judgment in a case of mandamus; if the party cannot be discharged on habeas corpus, it is decisive of jurisdiction, and shows most clearly, that the only questions which can be revised relate to errors alleged on matters of law, apparent in the record and judgment.

That this is a case within the jurisdiction of the Circuit Court, I therefore cannot doubt, even admitting that had it been exercised, in any way interfering with the defendant, under the circumstances of this case, it would have been contrary to law, on the true construction of the act and resolution of Congress; but that the action of that Court can be declared to be extrajudicial, on a matter within their acknowledged jurisdiction, merely because it related to an act which this Court deem not to be ministerial, seems to me to be the subversion of principles which have been long established, and till now have been held as acknowledged ones in every past adjudication.

In my opinion, there can be no subject on which this Court should act with more caution, or adhere more steadily to the marked corner-trees of the law, than those which point to, and denote the line between the jurisdiction of inferior Courts and its exercise; indeed there is no subject on which a departure from an established principle would more radically "subvert our whole system of jurisprudence." 9 Pet. 602. When it is considered, that on the adherence to this line, or a departure from it, every order, decree, or judgment of the Courts of the United States, on the various subjects of their jurisdiction, is absolutely conclusive on the subject matter decided, if no appeal or writ of error lies or is taken; or an absolute nullity binding neither on other Courts, parties, or the officers of those Courts which render a judgment, who may refuse to execute, or become punishable in executing it; the inquiry into jurisdiction becomes a question of the highest import. If the past adjudications of this Court had settled the law to be, that on the question whether a Circuit Court had jurisdiction of an action of ejectment or debt, this Court could look through the judgment, to the declaration and evidence, when the parties and subject matter were confessedly within their jurisdiction; and make the mode in which it had been exercised by a judgment, for plaintiff, or defendant, the test of the power to render any judgment at all; or if it had the right on an indictment and sentence, to make the same inquiry, when the power of the Court to try and punish was admitted; I should feel bound to apply the same principles to a case of mandamus, in the Circuit Court of this District, without feeling myself at liberty to look to the consequences. But finding the law to be settled otherwise in all other cases, and being wholly unable to discover in the decisions of this Court, any one rule or principle, which will except the case of a mandamus from the application of the cases cited; I feel bound to examine the effect of testing the jurisdiction of a Court on mandamus, by a rule, which is repudiated in every other case, civil or criminal. The difference between an adherence to, or an innovation upon established principles of general application, on any supposed inconvenience, seems to me to be as visible, as practical, and as important, as the difference between a change of system of jurisprudence by legislative power, and the assumption of a power by a Court, to make it what it ought to have been made by a law. Being fully convinced, that on the authority of this Court, the proposition, that if the Circuit Court can deliberate by judicial power, on granting a rule to show cause why a mandamus should not issue; all intermediate questions between the rule, and an attachment, are and can be nothing else but the exercise of jurisdiction, is fully supported, I have nothing to add on this point.

It is also my opinion, that the acts to be performed by the Secretary of the Navy, in relation to the payment of a pension, either under the general laws, or the special resolution in favour of the relator, if, by their fair construction, she was en-

3 E 2

titled to the extent of her claim, are of a purely ministerial nature, according to the decisions of this Court.

If the right of the relator was in all other respects clear, except so far as they depended on the construction of the acts of Congress, the case was of judicial cognisance only: the duty of a Secretary is not judicial; it is not his province to construe laws, which enjoin on him the performance of definite acts, differently from what the Courts have done, or may do. Where the law directs him to act, he must act according to law, on all matters where his duty is prescribed, so as to restrain his discretion; as the Commissioner of the navy pension fund, he decides whether the applicant comes within the law, on the evidence adduced, before him; but when he has decided that a pension is due, or when the law declares that a person named is entitled to one, and prescribes the amount, he has no longer a discretion to withhold it. The ascertainment of the date at which the pension commenced; its amount, and duration; are ministerial acts on which discretion is excluded, for its exercise cannot alter either; if the payment is a right of the applicant, the law makes it a duty to pay, or give a warrant for payment by the officer who holds the fund. Thus, under the general act, it is enacted, "That if any officer," &c. "have died," &c. "leaving a widow," such widow shall be entitled to receive," &c. (4 Story, 2542;) or resolved, "that the widow of the late S. D. be paid from the navy pension fund a pension," &c. (Ib. 2555;) the command of the law is unqualified in both cases; if the applicant comes within the description, the officer whose duty it is to pay, or direct the payment, has no discretion to do it or not, after being satisfied of the right of the applicant, as one of the beneficiaries of the law. The name must be inscribed on the pension roll, and thenceforth, the payment is but the execution of a specific, defined duty, prescribed by law, of the same nature as entering an ascertained credit, on the account of a contractor in the Post-office department, (12 Pet. 614;) the issuing a patent, after all the requisites of the law have been complied with, (6 Wheat. 600;) or the payment of a liquidated claim, under a special act of Congress directing it to be done. In all these cases, the act to be done is purely ministerial; all the discretion to be exercised has been exhausted; the duty is positive, by the command of the law, which no authority can supersede or grant a dispensation from its performance; nor while Kendall's case is recognised as authority, can the nature of an executive office exempt the incumbent from the supervisory power of a competent Court, in a case otherwise proper for its exercise. 12 Pet. 610—615.

The judges of the Courts of the United States are not clothed with any immunity or exemption from this power; it is applied to them; and Courts of record, of general jurisdiction to the extent of the judicial power of the United States, by this Court, and on the same principles, as to an executive officer, by the Court of this District, not where the law confides a discretion to do or withhold a particular act, but where it requires it to be done, as a ministerial duty. As where the law required, that after the Court had rendered a judgment, it should be signed by the judge, and the judge died after the rendition of the judgment, but without affixing his signature to the record; his successor refused to sign it, because the judgment had been given by his predecessor, and this Court held:—That the judge in office had a discretion to set aside the judgment by granting a new trial; but if he did not exercise his discretion by doing it as a judicial act, he was bound to sign the judgment as a mere ministerial act required by law; in order to give one party a right to execution, and the other a right of appeal or writ of error. In the opinion of this Court, there is the following sentence, which is too appropriate to one ground of objection to the jurisdiction, and action of the Circuit Court in this case, to be omitted; it is this:—

" But the District judge is mistaken in supposing that no one but the judge who renders the judgment can grant a new trial. He, as the successor of his prede-

cessor, can exercise the same powers, and has a right to act in every case that remains undecided on the docket, as fully as his predecessor could have done. The Court remains the same, and the change of the incumbent, cannot, and ought not, in any respect, to injure the rights of litigant parties." A peremptory mandamus was awarded. 8 Pet. 303, 304.

In this case the change of officers who had the disbursement of the pension fund, can have no effect on the rights of the relator; a refusal by the predecessor of the present incumbent, is no legal cause for his refusal to do the act required, had it been enjoined by law; it can be considered only as a repeated refusal of successive applications, having the same effect as if made to himself to perform the same ministerial act, which it would have been the duty of either to perform, if the right claimed had existed, but as it did not exist, the refusal was justifiable.

The remaining point in this case is, whether a writ of error lies from this, to the Circuit Court of this District, to remove and revise the proceeding on mandamus; which I shall not examine in detail, as my opinion in Holmes vs. Jennison, on the same question in the kindred case of habeas corpus, is given at length.

If this question remained as unembarrassed by the authority of this Court, as it was in the case of Holmes, I should have as little doubt in this, as I had in that case; but as this Court asserted their power to issue the writ of error in the case in 7 Wheat. 534, and acted on it in 12 Pet. 608—626; the question can no longer be considered exclusively on the principles of the common law, the terms of the Judiciary Act, or analogous decisions of this Court. Yet as the case in 7 Wheaton did not call for any action of this Court, as the argument is not set out, or any authority noted in favour of the writ of error, and the Court confined themselves to a mere declaration that it would lie, and in the case in 12 Peters, this question was argued only on one side, and entirely unnoticed by the Court in their opinion, it cannot be considered as conclusively settled.

That the great questions of jurisdiction, which arise in this Court, in cases on error under the twenty-second or twenty-fifth sections of the Judiciary Act, should be considered with the greatest deliberation, and remain open till all doubts are removed, especially in cases where the common law is decisive against the jurisdiction, no one will deny. When the Court express an opinion, or act in a case involving their jurisdiction, in which there is either no argument, a partial one, or ex parte only; it ought not, and cannot have the same weight as judicial authority, as when the whole subject is presented to the Court; considered as it may be elsewhere than in open Court, it is necessarily in the absence of counsel, and of any but a very limited reference to adjudged cases. In other times this Court often declared, that a point decided without argument remained open for consideration, (3 Cranch, 172. 6 Cranch, 317,) till it was directly made; even on a question of jurisdiction, which was for the first time made, thirty-four years after the Court had been in the constant exercise of that which was objected to.

In Buel vs. Van Ness, it was objected that the amount of the judgment in a state Court, was not sufficient to ground an appeal or writ of error; this Court say:— "This is a new question. Thirty-four years has this Court been adjudicating under the twenty-fifth section, &c.; and familiarly known to have passed in judgment upon cases of very small amount, without ever having its attention drawn to the construction, &c., now contended for. Nevertheless, if the received construction has been erroneously adopted, without examination, it is not too late to correct it now. But we think that it is not necessary to sustain our practice, upon contemporaneous, and long protracted expositions, that as well the words of the two sections under which we exercise appellate jurisdiction, as the reasons and policy on which those clauses were enacted, will sustain the received distinction between the cases to which those sections extend." 8 Wheat. 321, 322.

As no past opinion of this Court has taken this course, in considering this ques-

tion, I hold it to be as open now, as it was in the case just quoted; and shall pursue that which the Court then took.

A mandamus is directed to a judge, to an inferior Court, or an officer, commanding the performance of a specific act; but it lies in neither case, on any matter of discretion, or to coerce the judgment as to the manner of acting, where the law permits the doing or refusing to do the act; though it does lie to enforce the performance of a mere ministerial act, by an executive officer, (12 Pet. 610;) a judge or Court, (8 Pet. 302;) which they have no "authority to 'deny or control." Ib. The mandamus acts upon no right of the respondent of person or property, where he has no interest in the subject matter, as in the case now before us. "The real parties to the dispute, are the relator, and the United States," who cannot be sued, or the claim be in any way enforced against them, without their consent through an act of Congress; but when they consent to submit the whole subject of pensions, to an officer of their own, and impose on him a positive duty to pay, he is the mere instrument to execute the law. Vide 12 Pet. 611, 612.

The command of the writ of mandamus, is no "final judgment" in a cause before a Court, "on which a writ of error may issue for its reversal," (8 Pet. 303;) it is one of "those intermediate proceedings, which take place between the institution and trial of a suit; obedience may be refused, if it be shown that there are matters in the cause, which lie within the discretion of the Court below, which justify the refusal, (8 Pet. 589, 590;) and what is conclusive on this point, is; that a writ of error may be dismissed by this Court, for the want of jurisdiction; as was done in 12 Pet. 140; in the same case, in which a peremptory mandamus had been awarded four years before, (8 Pet. 304,) to sign a judgment previously rendered; and in which this Court refused a second mandamus, to render a final judgment, 9 Pet. 602. 605. All that this Court can do, is to order the Court below to proceed to judgment; but it will not direct in what manner its discretion shall be exercised, (8 Pet. 304. 9 Pet. 602, 603;) it compels them to "proceed to a final judgment, in order that we may exercise the jurisdiction of review given by the law," (12 Pet. 622;) but only for that purpose. Ib.

A mandamus never issues to an executive officer to control his discretion or judgment, where the law gives him any right to deliberate, it is to perform ministerial acts which the law has enjoined on him; the mandamus is a summary order to enforce the duty, by supplying a remedy for a denial of an existing right, where, for the want of a specific one, there would otherwise be a failure of justice. 12 Pet. 620. The writ of mandamus, like the writ of habeas corpus, is a writ of right; but the proceeding upon it is matter of discretion, in nowise partaking of the character of a final judgment, its effect, or an award in the nature of a final judgment, which can be revised on error; so the law has been finally settled in England by the House of Lords, as declared and recognised by this Court in 6 Pet. 657; and so it must be considered here, unless a final judgment means one thing in the Judiciary Act, and another and different thing at common law, which distinction is negatived in the same case. The writ of mandamus, as known to the common law, is well defined in 1 Cranch, 171, 5 Pet. 192, and 12 Pet. 620 : it is a prerogative writ, which is issued from the Court of King's Bench, in virtue of its general supervising power over all inferior tribunals and officers, to compel them to do what that Court has determined, or supposes to be consonant to right and justice, where there is no other specific remedy prescribed. Yet this Court have held, that the mandatory writ in the Register, which issues from the officina brevium under the seal of the Court of Chancery, performs the same office, without the interference of the Court of King's Bench. 5 Pet. 192—194. If this is so, then there is a specific remedy by an appropriate writ in the Register, grantable on motion in Chancery; there is a concurrent jurisdiction in the two Courts; and of consequence, it would seem not to be a prerogative writ, even by the common law, when directed to an inferior Court; but a writ in the nature of a mandamus described in 12 Pet. 622. In

5 Pet. 193, a mandamus to a public officer, is declared to be the exercise of original jurisdiction, but appellate when directed to a Court; the power of this Court to issue this writ is asserted, under the thirteenth section of the Judiciary Act, to be the same which is exercised by the Chancellor in England, and by the Supreme Courts of the States, in virtue of their "general superintendence of inferior tribunals," and the Court use this language; "The judicial act confers this power expressly on this Court. No other tribunal exists by which it can be exercised." Ib. 194. In 12 Pet. 621, "the power to issue this writ, and the purposes for which it may be issued in the Courts of the United States, other than in this District, is asserted under the fourteenth section, as a power common to this and the Circuit Courts in the States. But this power is not exercised as in England by the King's Bench, as having general supervising power over inferior Courts, but only for the purpose of bringing the case to a final judgment or decree, so that it may be reviewed." (Ib. 622.) So far then as respects a mandamus from this to a Circuit Court, or from a Circuit to a District Court, it is clear that no decision upon such writ is a final judgment revisable in error or on appeal, as well on these principles as the following language of this Court in 9 Pet. 602, in an unanimous opinion delivered by the late Chief Justice on a motion for a mandamus:—

"This Court is asked to decide, that the merits of the case are with the plaintiffs; and to command the District Court to render judgment in their favour. It is an attempt to introduce the supervising power of this Court into a cause, while depending in an inferior Court, and prematurely to decide it. In addition to this obvious unfitness of such a proceeding, its direct repugnance to the spirit and letter of our whole judicial system cannot escape notice. The Supreme Court in the exercise of its ordinary appellate jurisdiction, can take cognisance of no case, until a final judgment or decree shall have been rendered in the inferior Court. Though the merits of the cause may have been substantially decided, while any thing, though merely formal, remains to be done, this Court cannot pass upon the subject. If from any intermediate stage in the proceeding, an appeal might be taken to the Supreme Court, the appeal might be repeated to the great oppression of the parties. So if this Court might interpose in the progress of a cause by way of mandamus, and order a judgment or decree; a writ of error may be brought to the judgment, or an appeal from the decree, and a judgment or decree entered in pursuance of a mandamus, might be afterwards reversed. Such a procedure would subvert our whole system of jurisprudence."

Taking it then as settled, that on a proceeding by a mandamus to an inferior Court, no writ of error lies, I now proceed to inquire whether it will lie, when the mandamus is directed to an officer to perform a merely ministerial act, by a Court having original jurisdiction to award the writ, as the Court of this District is admitted to possess by the acts of February 1801, referred to in 12 Pet. 619. 622. 624. As the purposes of this case do not require it, I shall not examine into the apparent discrepancy between the opinion in 5 Pet. and 12 Pet. on the nature or office of the writ of mandamus, whether they depend on the thirteenth or fourteenth section of the Judiciary Act; but confine myself to the view which the Court take of the subject, under the act which gives jurisdiction to the Court of this District to award it; which is this, "That proceedings and an application to a Court of justice for a mandamus, are judicial proceedings, cannot admit of a doubt; and that this is a case in law, is equally clear. It is the prosecution of a suit, to enforce a right secured by a special act of Congress, requiring of the Postmaster-general, the performance of a precise, definite, and specific act, plainly enjoined by the law. It cannot be denied but that Congress had the power to command that act to be done; and the power to enforce the performance of the act, must rest somewhere, or it will present a case which has often been said to involve a monstrous absurdity in a well organized government, that there should be no remedy, although a clear and undeniable right should be shown to exist, and if the remedy cannot be applied by

the Circuit Court of this District, it exists nowhere. But by the express terms of this act, the jurisdiction of this Circuit extends to all cases in law, &c. No more general language could have been used; an attempt at specification would have weakened the force and extent of the general words—all cases. Here then is the delegation to this Circuit Court, of the whole judicial power in this District, and in the very words of the Constitution, which declares that the judicial power shall extend to all cases in law and equity arising under the laws of the United States," &c. 12 Pet. 623, 624.

No one has ever denied that Congress has power by the Constitution to give authority to the Courts of the United States, to issue a mandamus to an inferior Court, or a public officer; the only objection to its exercise by this Court, on the writ directed to the Secretary of State was, that it was by original jurisdiction, which could not be granted in such case. (1 Cranch, 175.) But this objection cannot avail, when applied to a Court of general, original, and exclusive jurisdiction, in the whole range of the judicial power of the Constitution; which necessarily embraces prerogative, among all other writs known to the common law, or the laws of the states which ceded this District to the United States, with powers of exclusive legislation in and over it. Such is the jurisdiction of the Circuit Court of this District, as declared in the above extract from the opinion in Kendall's case, which contains in substance the common law definition of the prerogative writ of mandamus; whether it is directed to a Court or an officer, it equally comes within the definition, being adapted to the exigency of the case, so as to give an adequate remedy whenever there is an existing right which can be enforced by no other process, which is the very office of the common law prerogative writ. There is no principle of law, there is no decision of this Court, or any provision of any act of Congress, which discriminates a mandamus to a Court, from one to an officer, either in its nature, the action of the Court upon it, or the effect thereof. It is but an order to do an act, ministerial in its nature, enjoined by law in a case which involves no discretion, or leaves any alternative; such an order is never made where a judicial act remains to be done by a Court, or an executive act to be performed by an officer which the law submits to the exercise of his own judgment on the matter. Thus, in 8 Pet. 304, the order was made to sign a judgment previously rendered, because the law commanded it; but in the same case, the Court refused to order a judgment to be rendered for the plaintiff. 9 Pet. 602. So in Kendall's case, the mandamus was properly issued for the reasons assigned, the act commanded was purely ministerial; it was refused in this case, because some discretion was involved, which will be found to be the turning point in all the cases at common law, or in this Court, without a dictum in either which asserts the doctrine, that the order of the Court partakes any more of the character or effect of a final judgment in the one class of cases than the other. Each is the prosecution of a suit to enforce a right, secured by a special, or the general law which governs the case; the proceeding is the same in both, from the presentation of the petition till the order of the Court is made; and when made, the order relates to a ministerial act, in which neither the Court or the officer has any interest, unless in cases where the mandamus restores the relator to an office, of which he has been ousted by an illegal act. But in such cases the mandamus affects only the possession, (Vide 12 Pet. 620,) the right to the office remains open on a quo warranto.

In the present case, the writ is prayed for in order to obtain the payment of a sum of money, to which the respondent has no claim; the act required of him, is to sign such warrant or other order on the officer who has the custody of the pension fund, as will enable the relator to receive what Congress have appropriated to her use. Whether such appropriation has been made, depends on the construction of the acts of Congress: which must be decided by the Court, and not the Secretary; if the right to the sum claimed exists by the law, its payment is as much a ministerial act in signing the warrant, as signing a judgment already

rendered; both being on execution of the command of the law; there is no principle which excludes a writ of error in one case, that can justify it in the other. The only question in this case is, whether Congress has directed the money to be paid, as it was in Kendall's case; whether the credit should be given; when that is settled, the mandamus only enforces the right of the relator, to receive that which Congress had declared belonged to her; the awarding the writ is by a summary order, made on affidavit and motion, without a jury, or the forms of the common law, being pursued, as in suits commenced by original writs. Whether the subject matter of the order relates to the payment of money, or any other act of a ministerial nature; the nature or character of the order does not become that of a final judgment, revisable by a writ of error; the common law does not authorize any appellate proceedings on a prerogative writ; the Judiciary Act makes no provision for it; and nothing but future legislation, can, in my opinion, convert a summary order on a motion or rule, into a final judgment, so as to make it cognisable in error. The reasoning of the Court, in 9 Pet. 602, is conclusive that error does not lie to an order awarding a mandamus to a Court. It is admitted that it does not lie at common law in any case of mandamus, (6 Pet. 657;) for which one reason alone is sufficient to show the true policy of the law. That as this remedy was designed to be a speedy one, the party who had obtained it should not lose its benefit by being hung up by a writ of error, (1 Strange, 543. 8 Co. 127<sup>b</sup>;) or, in the language of this Court, by the appeal being "repeated to the great oppression of the parties," (9 Pet. 602;) by subjecting them to all the delay incident to an appeal, or writ of error; which "would subvert our whole system of jurisprudence," (Ib.,) if a summary order shall be deemed a final judgment or decree.

The essence of a prerogative writ is in the promptitude of the remedy; it is devised to create one where none adequate existed; and it is administered so as to meet the ends of justice in a summary manner. 12 Pet. 620. It is not for me to say whether power to so act, ought to be subject to revision: my inquiry is only, whether the law has made it so, by prescribing one rule for the case of its exercise on a Court or judicial officer, and a different one for an executive or ministerial officer. The most solemn decisions of this Court justify me in denying the existence of any revising power in the first classes of cases; every reason and principle on which they are founded apply equally to the last classes: and where I find that the only cases in which the existence of such power is asserted or assumed, contain no reference to precedent authority, or reasons to support them, I cannot feel bound to consider the law to be so settled as to govern this case. Nor, in the course of the opinion now delivered by the Court, does there seem to me to be such a train of reasoning, or reference to settled principles, as to overcome the weight of authority in the previous adjudications of this Court.

In referring to the case of Weston vs. Charleston, in 2 Pet. 463, wherein it was held that a writ of error would lie under the twenty-fifth section, to the refusal of a state Court to award a prohibition; I think the Court has added to the strength of their own opinion, but little, if any thing in principle or authority: for no order of a Court partakes less of the character of a final judgment in a suit, than an order awarding or refusing a prohibition. In one case an inferior Court is ordered not to proceed to a judgment, but to surcease action in the cause; in the other, it is left free to act: but in either case the only question is, whether the inferior Court has jurisdiction; if they have, it cannot be controlled in its exercise: if they have not, they can render no judgment; the action of the Superior Court must necessarily be confined to jurisdiction, and its revision by this Court can extend no further.

In the opinion in 2 Pet., no adjudged case at the common law or in this Court is referred to; its jurisdiction seems to be assumed more from the supposed necessity of its exercise, than from any principle of law, or provision in the Judiciary Act; and no argument was had on this point, till it was directed by the Court,

after an argument on the merits at a preceding term; for which reasons, I have been disposed rather to look to this case as a beacon, than to adopt it as a precedent. It has been, in my opinion, unfortunate for this Court, that the course of argument, in cases involving the momentous question of what are the proper subjects for the exercise of its appellate jurisdiction, have been so limited as it appears in the reports of its decisions on this subject. In tracing them back to the organization of the Court, it will be found that forty years had elapsed before there was a writ of error sustained on a prohibition; more than thirty, before it was asserted that it would lie on a mandamus; fifty, before it was acted on; and that this is the first case in which it has been held to lie on a habeas corpus. This affords, it is true, no conclusive argument that the power exists only by assumption, because it has been so long dormant; yet it affords the most powerful reasons for the most thorough consideration of a case where its exercise is invoked for the first time, by a full research into the principles, the analogies, and the usages of law; which define appellate power and its subjects, according to the common law applied to the Judiciary Act, which, by reference, adopts it as its basis.

There is great danger of error in bringing any case within the twenty-second or twenty-fifth sections, which is either without precedent in the common law, or opposed to its settled principles, still more so, when both objections apply as they do in the case of a prohibition; for it will be found very difficult to exercise under the Judiciary Act, any appellate power which is repudiated by the principles, usages, and adjudged cases of the common law. And if it should so happen, that even on the fullest consideration, a single case of this description is acted upon, too much caution cannot be used in most thoroughly examining another case, supposed to be analogous; a fortiori, where the first innovation was without argument, a partial or ex parte one, or one directed on second thought, after the merits of the case had been discussed. No safer course can be adopted than was taken in the case in 8 Wheat. 321, 322, wherein the Court would not sustain an unquestioned practice of thirty-four years, "by contemporaneous and long protracted exposition," in the actual exercise of jurisdiction under the twenty-fifth section; but justified it by a reference to "the reasons and policy" developed in that and the twenty-second sections, in conferring their appellate power. Had this course been taken in this, and the case of Holmes vs. Jennison, by investigating the grounds on which a writ of error had been sustained on a prohibition; instead of assuming that position as impregnable, then holding that the appellate power to revise the proceedings on a mandamus was a consequence resulting from its exercise in a case of prohibition; and that the same power over a habeas, followed as the conclusion from those premises, the final result would have been more satisfactory, if not entirely different. Where this chain will end no one can tell.

In forming my opinion in this, and the case of Holmes, I have been fully convinced that it is founded on principles too well established by the adjudged cases, books of authority, and the decisions of this Court, to be shaken by the case of Weston vs. Charleston, or those which are dependent upon it; believing that that case rests alone on its own unsupported authority. I cannot recognise it as a basis for this, or the case of Holmes. Nor can I feel bound to consider the point as settled, so as to exclude further consideration, by reversing the course now taken by the Court; and looking through the cases of habeas corpus, and mandamus, to the case of prohibition on which they rest, bringing the exercise of appellate power of this Court over that case, to the test of the common law, the Judiciary Act, and the decisions of this Court, cited in this, and the opinion in Holmes' case, which have hitherto remained without notice in argument or opinion, and consequently not considered. When this course shall have been taken by the Court, mine will conform to whatever conclusion may be adopted; but while those cases referred to by me continue unnoticed, my judgment will be guided by them as authoritative; and until they shall be reconsidered and overruled, I cannot but consider them to be

more firmly rooted and planted in the law, more congenial to its principles, its policy, and the reasons on which it is founded, than any decisions which have been since made to the contrary. If the purposes of justice require a further expansion of our appellate power, it is the duty of Congress to prescribe it, but while the law remains unchanged by legislative power, I cannot cease to deprecate the onward progress of jurisdiction, by step on step, from case to case, to which no limit seems assignable, so long as the emergency of a cause can be held to justify the assumed necessity for the exercise of that power, where it is not clearly within the provisions of the Judiciary Act.