## Ex 'Parte Tobias Watkins.

A petition was presented by Tobias Watkins for a habeas corpus for the purpose of inquiring into the legality of his confinement in the gaol of the county of Washington, by virtue of a judgment of the circuit court of the United States of the district of Columbia, rendered in a criminal prosecution instituted against him in that court. The petitioner alleged that the indictments under which he was convicted and sentenced to imprisonment, charge no offence for which the prisoner was punishable in that court, or of which that court could take cognizance; and consequently, that the proceedings were *coram non judice.*

The supreme court has no jurisdiction in criminal cases which could reverse or affirm a judgment rendered in the circuit court in such a case, where the record is brought up directly by writ of error. [201]

The power of this court to award writs of habeas corpus is conferred expressly on this court by the fourteenth section of the judicial act, and has been repeatedly exercised. No doubt exists respecting the power.

No law of the United States prescribes the cases in which this great writ shall be issued, nor the power of the court over the party brought up by it. The term used in the constitution is one which is well understood, and the judicial act authorises the court, and all the courts of the United States, and the judges thereof, to issue the writ " for the purpose of inquiring into the cause of commitment. [201]

The nature and powers of the writ of habeas corpus. [202]

A judgment in its nature concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record whose jurisdiction is final, is as conclusive on all the world, as the judgment of this court would be. It is as conclusive on this court as on other courts. It puts an end to inquiry concerning the fact, by deciding it. [202]

With what propriety can this court look into an indictment found in the circuit court, and which has passed into judgment before that court? We have no power to examine the proceedings on a writ of error, and it would be strange, if under colour of a writ to liberate an individual from an unlawful imprisonment, the court could substantially reverse a judgment which the law has placed beyond its control. An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although it should be erroneous. [203]

The circuit court for the district of Columbia is a court of record, having general jurisdiction over criminal cases. An offence cognizable in any court is cognizable in that court. [203]

If the offence be punishable by law, that court is competent to inflict the punishment. The judgment of such a tribunal has all the obligation which the judgment of any tribunal can have. To determine whether the offence charged in the indictment be legally punishable or not, is among the most unquestionable of its powers and duties. The decision of this question is the exercise of its jurisdiction, whether its judgment be for or against the prisoner. The judgment is equally binding in one case and in the other, and must remain in

Vol. III.—Z

full force, unless reversed regularly by a superior court capable of reversing it. If this judgment is obligatory, no court can ever look behind it. [203]

Had any offence against the laws of the United States been in fact committed, the circuit court for the district of Columbia could take cognizance of it. The question whether any offence was committed, or was not committed; that is, whether the indictment did or did not show that an offence had been committed, was a question which this court was competent to decide. If its judgment was erroneous, a point which this court does not determine, still it is a judgment; and until reversed, cannot be disregarded. [203]

It is universally understood that the judgments of the courts of the United States, although their jurisdiction be not shown on the pleadings, are yet binding on all the world, and that this apparent want of jurisdiction can avail the party only on a writ of error. The judgment of the circuit court in a criminal case is of itself evidence of its own legality, and requires for its support no inspection of the indictment on which it is founded. The law trusts that court with the whole subject, and has not confided to this court the power of revising its decisions. This court cannot usurp that power by the instrumentality of a writ of habeas corpus. The judgment informs us that the commitment is legal, and with that information it is our duty to be satisfied. [207]

The cases of the United States vs. Hamilton, 3 Dall. Rep. 17; Ex parte Burford, 3 Cranch's Rep. 447; Ex parte Bollman and Swartwout, 4 Cranch; and Ex parte Kearney, 7 Wheat. 39; examined. [207]

THIS case came before the court on a petition for a habeas corpus, on the relation of Tobias Watkins, setting forth that at May term 1829 of the circuit court of the district of Columbia, in the county of Washington, certain presentments were found against him; upon three of which trials were had, and verdicts passed against him; upon which judgments were pronounced, purporting to condemn him to the payment of certain pecuniary fines and costs, and certain terms of imprisonment for the supposed offences therein. For the nature and terms of the indictments, and of the convictions and judgments thereon, the petition referred to the same. Copies and exemplifications of the records of the proceedings were annexed to the petition.

The petition proceeded to state, that, immediately on the rendition of the judgments, and in the pretended pursuance and execution of the same, the petitioner was, on the 14th of August 1829, committed to the common gaol of Washington county, in which he has since been confined, under colour and pretence of the authority, force, and effect of the said indictments; that he is well advised by counsel that the said convictions and judgments are illegal and wholly void upon

their faces, and give no valid authority or warrant whatever for his commitment and imprisonment; that the indictments do not, nor does any one of them charge or import any offence at common law whatever, cognizable in the course of criminal judicature, and especially no offence cognizable or punishable by the said circuit court; and that his imprisonment is wholly unjust, and without any lawful ground, warrant or authority whatever.

The petitioner prays the benefit of the writ of habeas corpus, to be directed to the marshal of the district of Columbia, in whose custody, as keeper of the gaol of the district, the petitioner is, commanding him to bring the body of the petitioner before the court, with the cause of his commitment; and especially commanding him to return with the writ the record of the proceedings upon the indictments, with the judgments thereupon; and to certify whether the petitioner be not actually imprisoned by the supposed authority, and in virtue of the said judgment.

The first indictment referred to in the petition, charged the petitioner as fourth auditor of the treasury of the United States, and as such having assigned to him the keeping of the accounts of the receipts and expenditures of the public moneys of the United States in regard to the navy department; with having obtained for his private use the sum of seven hundred and fifty dollars, the money of the United States, by means of a draft for that sum on the navy agent of the United States at New York, which draft was drawn by him in the city of Washington, in favour of C. S. Fowler, on the navy agent at New York, and negotiated in the city of Washington on the 16th of January 1828; the said sum of money having been by him represented to the secretary of the navy as required by the navy agent for the uses of the United States, and so represented in a requisition made to the navy agent for a warrant on the treasury of the United States for the amount of the draft, with other sums included in the requisition.

The second indictment charged the petitioner with having received from the navy agent of the United States at New York, the sum of three hundred dollars, money of the United

States, by means of fraudulent misrepresentations made to the navy agent, contained in a letter addressed to him on the 8th of October 1827, in which it was falsely stated, that the said sum of three hundred dollars was required for the use of the United States; and that the same was so obtained from the navy agent, by a draft on him in favour of C. J. Fowler, by whom the money was paid to the petitioner; on his having negotiated the draft.

The third indictment charged the petitioner with having procured to be drawn from the treasury of the United States the sum of two thousand dollars, by means of a requisition from the secretary of the navy; a blank requisition left by that officer in his department having, on the representation of the petitioner that the same was required for the public service by the navy agent at Boston, been filled up for this purpose; and for which he drew and negotiated drafts in the city of Washington, at different times, in favour of C. J. Fowler, in different sums amounting to two thousand dollars, and appropriated the same to his own use.

Messrs Jones and Coxe moved for a rule on the United States, to show cause why a habeas corpus should not issue, and proposed that the argument should take place on the motion upon all the points involved in the case. Mr Berrien, attorney general, objected to an argument on the motion. He stated that he was prepared to go into the argument on the return of the rule, but was not willing to do so on the motion.

The counsel for the petitioner observed, that in Kearney's case, 7 Wheat. the argument took place on the motion; and, as in this case the petition brought up the indictments and the judgments of the circuit court, the whole matter was now fully before the court.

Mr Chief Justice Marshall said, that the counsel for the petitioner and the attorney general might arrange among themselves as they thought proper when the argument should come on, either on the motion or the return. This not having been done, the rule was warded returnable on the following motion day.

On the return of the rule, Mr Coxe and Mr Jones for the petitioner contended, that no offence was charged in the indictments which was within the jurisdiction of the circuit court for the county of Washington, and therefore all the proceedings of that court were nullities and void.

1. All proceedings of a court beyond its jurisdiction are void. Wise *vs.* Withers, 3 Cranch, 331, 1 Peters's Condensed Rep. 552. Rose *vs.* Himely, 4 Cranch, 241, 268, 552. Doe *vs.* Harden, 1 Paine's Rep. 55, 58, 59.

2. In a case where a court acting beyond its jurisdiction has committed a party to prison, a *habeas corpus* is the proper remedy, and affords the means of trying the question. 3 Cranch, 448, 1 Peters's Condensed Rep. 594. Bollman *vs.* Swartwout, 4 Cranch, 75. Kearney's case, 7 Wheat. 38.

3. The writ does not issue of course, but the party must show that he is imprisoned by a court having no jurisdiction. 1 Chitty's Crim. Law, 124, 125. 7 Wheat. 88. A habeas corpus is a proper remedy for revising the proceedings of a court in a criminal case. 1 Chitty's Crim. Law, 180.

It was argued for the petitioner, that it has been decided in many cases, that a writ of habeas corpus may issue so as to make its action equivalent to that of a writ of error. 1 Chit. Crim. Law, 180.

The circuit court is a court of general criminal jurisdiction in cases within the local law, and within the law of Maryland. What is the effect of the clause of the act of congress establishing this court? It is to give it cognizance of "all offences;" but this does not mean that extraordinary powers are given to make new offences, and to punish all acts deemed offences. Offences are the violations of known and established local laws. The statute means offences against the laws of the United States in their sovereignty, and against the local laws of the district.

For the purposes of this inquiry it is immaterial whether the circuit court is or is not of limited jurisdiction. However extended its jurisdiction may be, it has defined limits, and these restrain it.

Suppose the court should entertain jurisdiction of cases

certainly not criminal, would not a decision in such a case be a nullity? As if on the face of an indictment an act which is of a civil nature should be made criminal. The court is limited to offences committed within its jurisdiction. Should it take cognizance of an act done in England, would not this court interfere?

It is admitted that the judgment of a court of competent jurisdiction is conclusive, when the case is one properly submitted to the operation of that jurisdiction. But it is not sufficient to say that its jurisdiction is general; it should also appear it had jurisdiction of the offence charged. Cited Rose *vs.* Himely, 5 Cranch, 313; Griffith *vs.* Frazier, 8 Cranch, 9.

It is asked whether this court will look into any criminal case which has passed under the judgment of the circuit court. Suppose a sentence imposed not authorised by law; would not this court interfere by its writ of habeas corpus?

It is not contended that every excess of jurisdiction is within the principle claimed. There is a difference between a rule which is reasonable, and that which goes into extravagance. It may not be defined, but it can be felt; and this is a case where this rule can apply. The position that the decision of an inferior court of the United States in a criminal case cannot be inquired into unless there is an appellate jurisdiction in such cases, goes too far; and runs into the argumentum in absurdum.

In all the cases which have come before this court, in which a writ of habeas corpus has been applied for, the decision has been in favour of the jurisdiction. There has been enough shown here in this preliminary question to authorise the writ, as the only inquiry is, whether the judgment of the circuit court is conclusive upon all the matters before the court.

The counsel for the petitioner proceeded to argue at large upon authorities that the offences charged in the indictments were not cognizable in the circuit court. As this point was not noticed in the opinion of the court, the argument is omitted. They cited 7 Cranch, 32. 1 Wheat. 415. 1 Gall.

488.  2 East, 814.  2 Maule and Selw. 378.  4 Wheat. 405, 424, 430, 410, 416, 427.  1 Cranch, 164.

The attorney general denied that it was competent for this court to revise the proceedings of the circuit court in a criminal case, or to award a habeas corpus to bring into revision such proceedings.

No such case was to be found since the organization of the court; and as writs of error and appeals are expressly limited to cases which are not criminal, the issuing of such a writ, and for such a purpose, would be contrary to law.

He contended, that the case of Bollman vs. Swartwout was not an authority for the claim of the petitioner. That was a case of bail, and not a case in which the judgment of a court had passed. In Kearney's case the writ of habeas corpus was refused; the petitioner being in confinement for contempt, which was considered equivalent to a sentence of the court.

It is now to be decided in the case before the court, whether they will, through the means of a habeas corpus, revise the sentence of an inferior court in a criminal case, so as to determine whether it had jurisdiction of the offence charged in an indictment found in that court.

The petition asserts, 1. That no offence is charged in the indictment cognizable by the law of Maryland.

2. That no offence is charged which is cognizable by the laws of the United States.

As to the first, if it is competent to this court to examine the point, the whole case of the petition is open, as the circuit court is said to have erred in deciding that the offence was cognizable by it. The circuit court of the district of Columbia has jurisdiction, such as is possessed by all other circuit courts of the United States; and it has also general jurisdiction of offences committed in the district. In the legitimate exercise of this jurisdiction to decide what is an offence, it is said to have exceeded its jurisdiction. By what authority can this decision of a court of general, final, criminal jurisdiction, be re-examined here? The court below has decided that the facts of the case amount to a fraud on the

government, committed by false pretences. It may be they have erred in their judgment; but the error cannot be revised here. They have jurisdiction to decide that the offence was committed in the district, and they have so decided. The power of the court is, 1. To try the offender. 2. To determine what the offence is. 3. To punish after conviction. These are exclusive and final powers.

There is no power or authority in this court to re-examine a decision of a circuit court as to its jurisdiction in a criminal case. The proposition that the decisions of a court in a case beyond its jurisdiction are void, although true in the abstract, is practically false. Such decisions must stand, unless there is power in another court to reverse them. The truth of this is maintained in civil as well as criminal cases.

It must appear that there is jurisdiction in a superior court to award a writ of error, or a habeas corpus, which may bring up the question; not alone that the judgment of the court was erroneous.

If this court possesses such powers, it must be derived from one of three sources: 1. From the act of congress appropriating and regulating the powers of this court. No powers are given by the act to revise the proceedings of the circuit court in criminal cases. 2. From the powers of this court as the supreme court, to exercise supervision over all inferior courts. In the case of Bollman *vs.* Swartwout, the court have said they have no such powers. 3. Can those powers be derived from the power to issue writs of habeas corpus, and by this to revise the judgments of inferior judicatures exercising criminal jurisdiction?

Congress have carefully guarded against this: they have given appellate powers in civil, admiralty and maritime cases, and have refused them in criminal cases. It cannot be supposed that when thus refused, they can be exerted under the writ of habeas corpus, which this court is authorised to issue. There are many cases for the employment of this writ, without claiming for it the rights asserted to belong to it by the counsel for the petitioner.

[Ex Parte Tobias Watkins.]

Mr Chief Justice MARSHALL delivered the opinion of the court.

This is a petition for a writ of habeas corpus to bring the body of Tobias Watkins before this court, for the purpose of inquiring into the legality of his confinement in gaol. The petition states that he is detained in prison by virtue of a judgment of the circuit court of the United States, for the county of Washington, in the district of Columbia, rendered in a criminal prosecution carried on against him in that court. A copy of the indictment and judgment is annexed to the petition, and the motion is founded on the allegation that the indictment charges no offence for which the prisoner was punishable in that court, or of which that court could take cognizance; and consequently that the proceedings are *coram non judice*, and totally void.

This application is made to a court which has no jurisdiction in criminal cases (3 Cranch, 169;) which could not revise this judgment; could not reverse or affirm it, were the record brought up directly by writ of error. The power, however, to award writs of *habeas corpus* is conferred expressly on this court by the fourteenth section of the judicial act, and has been repeatedly exercised. No doubt exists respecting the power; the question is, whether this be a case in which it ought to be exercised. The cause of imprisonment is shown as fully by the petitioner as it could appear on the return of the writ; consequently the writ ought not to be awarded, if the court is satisfied that the prisoner would be remanded to prison.

No law of the United States prescribes the cases in which this great writ shall be issued, nor the power of the court over the party brought up by it. The term is used in the constitution, as one which was well understood; and the judicial act authorises this court, and all the courts of the United States, and the judges thereof, to issue the writ "for the purpose of inquiring into the cause of commitment." This general reference to a power which we are required to exercise, without any precise definition of that power, imposes on us the necessity of making some inquiries into its use,

VOL. III.—2 A

according to that law which is in a considerable degree incorporated into our own. The writ of *habeas corpus* is a high prerogative writ, known to the common law, the great object of which is the liberation of those who may be imprisoned without sufficient cause. It is in the nature of a writ of error, to examine the legality of the commitment. The English judges, being originally under the influence of the crown, neglected to issue this writ where the government entertained suspicions which could not be sustained by evidence; and the writ when issued was sometimes disregarded or evaded, and great individual oppression was suffered in consequence of delays in bringing prisoners to trial. To remedy this evil the celebrated *habeas corpus* act of the 31st of Charles II. was enacted, for the purpose of securing the benefits for which the writ was given. This statute may be referred to as describing the cases in which relief is, in England, afforded by this writ to a person detained in custody. It enforces the common law. This statute excepts from those who are entitled to its benefit, persons committed for felony or treason plainly expressed in the warrant, as well as persons convicted or in execution.

The exception of persons convicted applies particularly to the application now under consideration. The petitioner is detained in prison by virtue of the judgment of a court, which court possesses general and final jurisdiction in criminal cases. Can this judgment be re-examined upon a writ of habeas corpus?

This writ is, as has been said, in the nature of a writ of error which brings up the body of the prisoner with the cause of commitment. The court can undoubtedly inquire into the sufficiency of that cause; but if it be the judgment of a court of competent jurisdiction, especially a judgment withdrawn by law from the revision of this court, is not that judgment in itself sufficient cause? Can the court, upon this writ, look beyond the judgment, and re-examine the charges on which it was rendered. A judgment, in its nature, concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record whose jurisdiction is final, is as conclusive on all

the world as the judgment of this court would be. It is as conclusive on this court as it is on other courts. It puts an end to inquiry concerning the fact, by deciding it.

The counsel for the prisoner admit the application of these principles to a case in which the indictment alleges a crime cognizable in the court by which the judgment was pronounced; but they deny their application to a case in which the indictment charges an offence not punishable criminally according to the law of the land. But with what propriety can this court look into the indictment? We have no power to examine the proceedings on a writ of error, and it would be strange, if, under colour of a writ to liberate an individual from unlawful imprisonment, we could substantially reverse a judgment which the law has placed beyond our control. An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although it should be erroneous. The circuit court for the district of Columbia is a court of record, having general jurisdiction over criminal cases. An offence cognizable in any court, is cognizable in that court. If the offence be punishable by law, that court is competent to inflict the punishment. The judgment of such a tribunal has all the obligation which the judgment of any tribunal can have. To determine whether the offence charged in the indictment be legally punishable or not, is among the most unquestionable of its powers and duties. The decision of this question is the exercise of jurisdiction, whether the judgment be for or against the prisoner. The judgment is equally binding in the one case and in the other; and must remain in full force unless reversed regularly by a superior court capable of reversing it.

If this judgment be obligatory, no court can look behind it. If it be a nullity, the officer who obeys it is guilty of false imprisonment. Would the counsel for the prisoner attempt to maintain this position?

Questions which we think analogous to this have been frequently decided in this court. Kemp's Lessee vs. Kennedy et al. 5 Cranch, 173, was a writ of error to a judgment in

[Ex Parte Tobias Watkins.]

ejectment, rendered against her in the circuit court of the United States for the district of New Jersey. An inquisition taken under the confiscating acts of New Jersey, had been found against her, on which a judgment of condemnation had been rendered by the inferior court of common pleas for the county of Hunterdon. The land had been sold under this judgment of condemnation, and this ejectment was brought against the purchaser. The title of the plaintiff being resisted under those proceedings, his counsel prayed the court to instruct the jury that they ought to find a verdict for him. The court refused the prayer, and did instruct the jury to find for the defendants. An exception was taken to this direction, and the cause brought before this court by writ of error. On the argument the counsel for the plaintiff made two points. 1. That the proceedings were erroneous. 2. That the judgment was an absolute nullity. He contended that the individual against whom the inquest was found, was not comprehended within the confiscating acts of New Jersey. Consequently, the justice who took the inquisition had no jurisdiction as regarded her. He contended also that the inquisition was entirely insufficient to show that Grace Kemp, whose land had been condemned, was an offender under those acts. He then insisted that the tribunal erected to execute these laws, was an inferior tribunal, proceeding by force of particular statutes out of the course of the common law; it was a jurisdiction limited by the statute, both as to the nature of the offence, and the description of persons over whom it should have cognizance. Every thing ought to have been stated in the proceedings which was necessary to give the court jurisdiction, and to justify the judgment of forfeiture. If the jurisdiction does not appear upon the face of the proceedings, the presumption of law is, that the court had not jurisdiction, and the cause was *coram non judice*; in which case no valid judgment could be rendered.

The court said, that however clear it might be in favour of the plaintiff on the first point, it would avail him nothing unless he succeeded on the second.

The court admitted the law respecting the proceedings

of inferior courts in the sense in which that term was used in the English books; and asked, "was the court in which this judgment was rendered an inferior court in that sense of the term?

"All courts from which an appeal lies, are inferior courts in relation to the appellate courts, before which their judgment may be carried; but they are not therefore inferior courts in the technical sense of those words. They apply to courts of special and limited jurisdiction, which are erected on such principles that their judgments taken alone are entirely disregarded, and the proceedings must show their jurisdiction. The courts of the United States are all of limited jurisdiction, and their proceedings are erroneous if the jurisdiction be not shown upon them. Judgments rendered in such cases may certainly be reversed; but this court is not prepared to say that they are absolute nullities, which may be totally disregarded."

The court then proceeded to review the powers of the courts of common pleas in New Jersey. They were courts of record, possessing general jurisdiction in civil cases, with the exception of suits for real property. In treason, their jurisdiction was over all who could commit the offence.

After reviewing the several acts of confiscation, the court said, that they could not be fairly construed to convert the courts of common pleas into courts of limited jurisdiction. They remained the only courts capable of trying the offences described by the laws.

In the particular case of Grace Kemp, the court said, that "the court of common pleas was constituted according to law; and if an offence had been in fact committed, the accused was amenable to its jurisdiction, so far as respected her property in the state of New Jersey. The question whether this offence was or was not committed, that is, whether the inquest, which is substituted for a verdict on an indictment, did or did not show that the offence had been committed, was a question which the court was competent to decide. The judgment it gave was erroneous; but it is a judgment, and, until reversed, cannot be disregarded."

This case has been cited at some length, because it is thought to be decisive of that now under consideration.

Had any offence against the laws of the United States been in fact committed, the circuit court for the district of Columbia could take cognizance of it. The question whether any offence was, or was not committed, that is, whether the indictment did or did not show that an offence had been committed, was a question which that court was competent to decide. If its judgment was erroneous, a point which this court does not determine, still it is a judgment, and, until reversed, cannot be disregarded.

In Skillern's Executors vs. May's Executors, 6 Cranch, 267, a decree pronounced by the circuit court for the district of Kentucky had been reversed, and the cause was remanded to that court, that an equal partition of the land in controversy might be made between the parties. When the cause again came on before the court below, it was discovered that it was not within the jurisdiction of the court; whereupon the judges were divided in opinion, whether they ought to execute the mandate, and their division was certified to this court. This court certified, that the circuit court is bound to execute its mandate, "although the jurisdiction of the court be not alleged in the pleadings." The decree having been pronounced, although in a case in which it was erroneous for want of the averment of jurisdiction, was nevertheless obligatory as a decree.

The case of Williams et al. vs. Armroyd et al. 7 Cranch, 423, was an appeal from a sentence of the circuit court for the district of Pennsylvania, dismissing a libel which had been filed for certain goods which had been captured and condemned under the Milan decree. They were sold by order of the governor of the island into which the prize had been carried, and the present possessor claimed under the purchaser. It was contended, that the Milan decree was in violation of the law of nations, and that a condemnation professedly under that decree could not change the right of property. This court affirmed the sentence of the circuit court, restoring the property to the claimant, and said " that

the sentence is avowedly made under a decree subversive of the law of nations, will not help the appellant's case in a court which cannot revise, correct, or even examine that sentence. If an erroneous judgment binds the property on which it acts, it will not bind that property the less, because its error is apparent. Of that error, advantage can be taken only in a court which is capable of correcting it."

The court felt the less difficulty in declaring the edict under which the condemnation had been made to be " a direct and flagrant violation of national law," because the declaration had already been made by the legislature of the union. But the sentence of a court under it was submitted to, as being of complete obligation.

The cases are numerous, which decide that the judgments of a court of record having general jurisdiction of the subject, although erroneous, are binding until reversed. It is universally understood that the judgments of the courts of the United States, although their jurisdiction be not shown in the pleadings, are yet binding on all the world ; and that this apparent want of jurisdiction can avail the party only on a writ of error. This acknowledged principle seems to us to settle the question now before the court. The judgment of the circuit court in a criminal case is of itself evidence of its own legality, and requires for its support no inspection of the indictments on which it is founded. The law trusts that court with the whole subject, and has not confided to this court the power of revising its decisions. We cannot usurp that power by the instrumentality of the writ of habeas corpus. The judgment informs us that the commitment is legal, and with that information it is our duty to be satisfied.

The counsel for the petitioner contend, that writs of habeas corpus have been awarded and prisoners liberated in cases similar to this.

In the United States vs. Hamilton, 3 Dall. 17, the prisoner was committed upon the warrant of the district judge of Pennsylvania, charging him with high treason. He was, after much deliberation, admitted to bail. This was a proceeding contemplated by the thirty-third section of the judicial act, which declares that in cases where the punishment

[Ex Parte Tobias Watkins.]

may be death, bail shall not be admitted but by the supreme or a circuit court, or by a justice of the supreme court, or a judge of the district court.

In the case Ex parte Burford, 3 Cranch, 447, the prisoner was committed originally by the warrant of several justices of the peace for the county of Alexandria. He was brought by a writ of habeas corpus before the circuit court, by which court he was remanded to gaol, there to remain until he should enter into recognizance for his good behaviour for one year. He was again brought before the supreme court on a writ of habeas corpus. The judges were unanimously of opinion that the warrant of commitment was illegal, for want *of stating some good cause certain supported by oath.* The court added that, " if the circuit court had proceeded, *de novo,* perhaps it might have made a difference ; but this court is of opinion that that court has gone only on the proceedings before the justices. It has gone so far as to correct two of the errors committed, but the rest remain." The prisoner was discharged.

In the case of Bollman *vs.* Swartwout, the prisoners were committed by order of the circuit court, on the charge of treason. The habeas corpus was awarded in this case on the same principle on which it was awarded in the case of 3 Dall. 17. The prisoners were discharged, because the charge of treason did not appear to have been committed. In no one of these cases was the prisoner confined under the judgment of a court.

The case Ex parte Kearney, 7 Wheat. 39, was a commitment by order of the circuit court for the district of Columbia, for a contempt. The prisoner was remanded to prison. The court, after noticing its want of power to revise the judgment of the circuit court in any case where a party had been convicted of a public offence, asked, " if then this court cannot directly revise a judgment of the circuit court in a criminal case, what reason is there to suppose that it was intended to vest it with the authority to do it indirectly." The case Ex parte Kearney bears a near resemblance to that under consideration.

The counsel for the prisoner rely, mainly, on the case of

Wise *vs.* Withers, 3 Cranch, 330. This was an action of trespass *vi et armis,* for entering the plaintiff's house and taking away his goods. The defendant justified as collector of the militia fines. The plaintiff replied that he was not subject to militia duty, and on demurrer this replication was held ill. This court reversed the judgment of the circuit court, because a court martial had no jurisdiction over a person not belonging to the militia, and its sentence in such a case being *coram non judice,* furnishes no protection to the officer who executes it.

This decision proves only that a court martial was considered as one of those inferior courts of limited jurisdiction, whose judgments may be questioned collaterally. They are not placed on the same high ground with the judgments of a court of record. The declaration, that this judgment against a person to whom the jurisdiction of the court could not extend, is a nullity; is no authority for inquiring into the judgments of a court of general criminal jurisdiction, and regarding them as nullities, if, in our opinion, the court has misconstrued the law, and has pronounced an offence to be punishable criminally, which, as we may think, is not so.

Without looking into the indictments under which the prosecution against the petitioner was conduc .d, we are unanimously of opinion that the judgment of a court of general criminal jurisdiction justifies his imprisonment, and that the writ of *habeas corpus* ought not to be awarded.

On consideration of the rule granted in this case, on a prior day of this term, to wit, on Tuesday the 26th of January of the present term of this court, and of the arguments thereupon had; it is considered, ordered and adjudged by this court, that the said rule be, and the same is hereby discharged, and that the prayer of the petitioner for a writ of habeas corpus be, and the same is hereby refused.