FULGHUM & Co. *v.* UNITED STATES[1]

United States Customs Court, Second Division

(Decided December 12, 1938)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiffs.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

---

[1] C. D. 66.

Before Tilson, Kincheloe, and Dallinger, Judges

Tilson, Judge: This suit complains that the collector "did not reliquidate in accordance with the decision on protest number 9312 wherein all the merchandise was held dutiable at 60 per centum ad valorem instead of 90 per centum ad valorem." The collector's number 9312, referred to above, was this court's number 402949–G.

This case was originally submitted for decision upon the following stipulation, entered into by and between counsel for the respective parties:

That the merchandise covered by the above-entitled protest and marked with an (x) in red ink on the invoice, consists of hats composed in chief value of cellulose filaments similar to those the subject of *Amberg Schwab* v. *United States*, T. D. 46204.

That the record in T. D. 46204 be incorporated and made a part of the record in this case.

In accordance with the above stipulation and following the authority therein cited, this court did, on May 7, 1934, render judgment holding the merchandise marked with an X in red ink on the invoices to be properly dutiable at the rate of 60 per centum ad valorem under paragraph 31 of the Tariff Act of 1922, and directed the collector of customs at the port of Los Angeles to reliquidate the entry accordingly.

The public records of this office, of which we must take judicial cognizance, show that no appeal was taken from said decision, nor was any motion for a rehearing made by either party. Therefore, at the expiration of sixty days from May 7, 1934, our judgment became final and conclusive upon all persons, section 515, Tariff Act of 1922, and nothing remained to be done except the ministerial act of the collector reliquidating the entry as directed in our judgment.

It appears from the record now before us that when the collector came to reliquidate according to our judgment, he followed and obeyed our judgment only as to merchandise valued at $155 and that as to merchandise covered by our judgment valued at $154 he failed and refused to obey and follow said judgment, stating that merchandise to this value was in the warehouse June 30, 1930. This reliquidation was made on September 4, 1934.

Referring to the refusal of the collector of customs to obey the mandate of this court in the case of *Bullock's* v. *United States*, T. D. 47809, we said, in part:

So long as jurisdiction over this case resided in the collector, the law allowed him broad latitude as to the action he might take and a wide range of discretion, but once the collector had lost jurisdiction over the case he became nothing more than a mere ministerial officer to follow and obey the mandates of this court. He lost all of his discretion in the matter once he lost his jurisdiction of the case, and it is not for him, once a decision had been rendered by this court, and the time for appeal therein has expired, to say whether or not the merchandise covered by a

decision is or is not the merchandise covered by a protest. That is a matter which has already been determined by this court and is no longer open to so much as a suggestion from the collector.

When this court rendered its decision in this case on May 7, 1934, and the time for appeal therefrom had expired, there was nothing left for the collector to do except perform the ministerial duty of reliquidating the entry as directed in said judgment. This is true whether a part of the merchandise was in the warehouse or otherwise. Had the collector or any other interested party concluded, before our judgment became final and conclusive upon all persons, that our decision and judgment were erroneous because the merchandise or a part thereof was in the warehouse on June 30, 1930, or for any other reason, he or they had ample machinery at their command by which said decision and judgment could have been corrected, but when they fail and refuse to employ such machinery to correct such error, if there be one, and the decision and judgment become final, neither the collector nor any one else could correct what they consider an error by failing and refusing to obey our mandate and judgment.

Whether or not this court in its original decision and judgment had jurisdiction of that portion of the merchandise which remained in the warehouse on June 17, 1930, need not be here determined. Suffice it to say that for a long period of time after our judgment became final no one questioned our original jurisdiction over the parties or any portion of the merchandise. It is well settled that under circumstances such as we have here it is now too late to raise the question of jurisdiction. This was settled by the Supreme Court of the United States in the case of *Skillern's Executors* v. *May's Executors*, 10 U. S. (6 Cranch) 267, decided in 1810, which we quote as follows:

### SKILLERN'S EXECUTORS v. MAY'S EXECUTORS

#### Jurisdiction

It is too late to question the jurisdiction of the circuit court, after the cause has been sent back by mandate.

This was a case certified from the Circuit Court for the District of Kentucky, the judges of that court being divided in opinion.

The former decree of the court below had been reversed in this court, and the cause "remanded for further proceedings to be had therein, in order that an equal and just partition of the 2,500 acres of land, mentioned in the assignment of the 6th of March 1785, be made between the legal representatives of the said George Skillern and the said John May." (*Vide ante* vol. 4, p. 141.)

The cause being before the court below upon the *mandate*, the question occurred which is stated in the following certificate, viz. "In this case a final decree had been pronounced, and by writ of error removed to the supreme court, who reversed the decree, and after the cause was sent back to this court it was discovered to be a cause not within the jurisdiction of the court; but a question arose whether it can now be dismissed for want of jurisdiction, after the supreme court had acted thereon. The opinion of the judges of this court being opposed on this

question, it is ordered "that the same be adjourned to the supreme court for their decision," &c.

*This court*, after consideration, directed the following opinion to be certified to the court below, viz.

It appearing that the merits of this cause had been finally decided in this court, and that its mandate required only the execution of its decree, it is the opinion of this court that the circuit court is bound to carry that decree into execution, although the jurisdiction of that court be not alleged in the pleadings.

In the case of *McCormick* v. *Sullivant*, 23 U. S. (10 Wheat.) 192, in commenting upon the above decision, Mr. Justice Washington said:

Now, it is very clear that, if the decree had been considered as a nullity, on the ground that jurisdiction was not stated in the proceedings, this court could not have required it to be executed by the inferior court.

In the same opinion, Mr. Justice Washington further states as follows:

But this reason proceeds upon an incorrect view of the character and jurisdiction of the inferior courts of the United States. They are all of limited jurisdiction; but they are not, on that account, inferior courts, in the technical sense of those words, whose judgments, taken alone, are to be disregarded. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error or appeal, be reversed for that cause. But they are not absolute nullities.

In the case of *Ex parte Watkins*, 28 U. S. (3 Pet.) 193, Mr. Chief Justice Marshall held that:

It is universally understood that the judgments of the courts of the United States, although their jurisdiction be not shown in the pleadings, are yet binding on all the world; and that this apparent want of jurisdiction can avail the party only on a writ of error.

In the case of *Fulghum* v. *United States*, decided by this court on May 7, 1934, even though our jurisdiction over that portion of the merchandise remaining in the warehouse was not affirmatively established, yet our judgment was binding on all persons. If there were any apparent want of jurisdiction of such merchandise, this could have availed the parties in this case only on an appeal, or motion for rehearing. Once our judgment became final upon all persons it was too late to raise any question of jurisdiction.

The pronouncements made in the decisions quoted above were cited with approval and followed by the appellate court in the case of *Garbey* v. *United States*, 25 C. C. P. A. 88, T. D. 49067, with the following observation:

Extensive research on our part fails to disclose any case in which the Supreme Court has abrogated or, to any extent, modified, the rule thus announced by it. Upon the contrary, it has been cited with approval in many decisions of that court, a number of them being cases where it was held that there may not be a collateral attack upon a judgment or decree of a court of the United States after final disposition of a case, even though the jurisdictional facts do not appear in the record.

It is therefore clear from the above authorities that even though our jurisdiction over that portion of the merchandise remaining in the warehouse were assumed, or did not affirmatively appear from the record, there can be no collateral attack upon our judgment or decree after the same has become final and conclusive upon all persons. The merits of this case having been finally decided in this court, and its mandate only requiring the execution of its decree, the collector of customs at Los Angeles was bound to carry that decree into execution, notwithstanding the fact that this court's jurisdiction might not have been affirmatively shown from the record before it.

At no time during which this cause of action was before this court was any question raised as to the court's jurisdiction over the parties to this action, and at no time during which this cause of action was before the court was any contention made that this court did not have jurisdiction over the merchandise, both in and out of the warehouse. In view of the fact that this case was originally submitted on a stipulation of fact, entered into by counsel for both parties, it would appear that this court's jurisdiction was conceded, both as to the parties and all of the merchandise, by both parties to the litigation. It is now too late to raise any question of jurisdiction. As stated in the *Skillern* case, *supra:*

It is too late to question the jurisdiction of the circuit court, after the case has been sent back by mandate.

It appears from the record that merchandise to the value of $154 has remained in the warehouse to this date. Whether or not the collector at Los Angeles, after he has executed our original judgment in this case, will have jurisdiction over that portion of the merchandise still remaining in the warehouse, by virtue of the provisions of section 557 of the Tariff Act of 1930, we deem it unnecessary here to decide. Any future action which the collector may take, after he has executed and obeyed our original judgment in this case, with reference to that portion of the merchandise remaining in the warehouse with which the plaintiffs may be dissatisfied, can only be passed upon by us when properly presented. Ample protection of plaintiffs' rights in such a case is provided for by statute.

To sustain the collector's action of refusing to obey and execute our original judgment in this case would be to render the judgments of this court absolutely nullities, to be respected and obeyed by the collectors only if and when they agreed with such judgments. Thus it would be impossible for an importer ever to secure a refund of moneys illegally exacted and collected by collectors of customs, unless between the date of the original classification of the merchandise and the date of the receipt by the collector of our judgment he had had a change of heart. This would make the collectors appellate courts, not only over this court but also over the Court of Customs and

Patent Appeals. If they be not required under the law to obey and execute our judgments, no good reason appears why they should not treat the judgments of the appellate court with equal disrespect. Certainly the collectors get no such appellate authority from the statute, and no reason exists for sanctioning such assumed authority.

In this connection we quote the following from the case of *Dow* v. *United States*, T. D. 48163:

As to the third question here presented, we are of the opinion that the collector, being a purely ministerial officer and by statute charged with the administration of the law, is bound to follow the judgments of this court whether he may regard them as right or wrong. He could of course have had the matters in question in the present case called to the attention of this court through an application for rehearing seasonably filed, or, if he so elected, could have had a timely appeal filed from this court's decision. He did neither. Rather, he chose arbitrarily to reliquidate the entry as he deemed proper and to ignore the judgment of this court. To hold such procedure legal would in effect be an attempt to vest in collectors appellate jurisdiction over the judgments of this court. The mere statement thereof manifests the utter absurdity of any such proposition.

The judgment of this court issued on May 7, 1934, covered by suit 402949–G, having become final and conclusive upon all parties, the collector of customs at the port of Los Angeles is hereby directed and commanded to proceed forthwith to obey and execute the same and to reliquidate entry W. H. 10, covered by suit 402949–G as directed in said judgment.