Roland VANCE, Appellee,

v.

Jerry C. HEDRICK, Acting Warden;
Harley Mooney, Superintendent, West
Virginia State Police, Appellants.

No. 80–6800.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1981.

Decided Sept. 17, 1981.

Rehearing and Rehearing En Banc
Denied Oct. 28, 1981.

Silas B. Taylor, Asst. Atty. Gen., Charleston, W. Va. (Chauncey H. Browning, Jr., Atty. Gen., S. Clark Woodroe, Asst. Atty. Gen., Charleston, W. Va., on brief), for appellants.

John Preston Bailey, Wheeling, W. Va. (Bailey, Byrum & Vieweg, Wheeling; W. Va., on brief), for appellee.

Before HAYNSWORTH, Senior Circuit Judge, ERVIN, Circuit Judge, and RAMSEY *, District Judge.

HAYNSWORTH, Senior Circuit Judge:

The question is the limits of the reach of the federal writ of habeas corpus, viewed in its original concept as available only on the question of the competence of the sentencing court, when there are procedural defects characterized by the relevant state court as "jurisdictional." We conclude that the federal writ is unavailable.

I.

In August, 1975 Vance was tried upon a charge of breaking and entering in the cir-

* Honorable Norman P. Ramsey, District Judge for the District of Maryland, sitting by designation.

cuit court of Logan County, West Virginia, a court competent to try him upon the charge, and was found guilty by a jury on August 13. He appears to have been the leader of a small group which broke into a store during the night and stole a number of guns and some ammunition. Three of the guns, left by the group with Vance's brother, were recovered; the rest, last known to have been stashed in Vance's automobile, were not.

In accordance with § 61–11–19 of the West Virginia Code, W.Va.Code § 61–11–19 (Michie 1977 Repl.Vol.), the prosecutor immediately informed the court that Vance had twice before been convicted of felonies. Upon his third felony conviction, § 61–11–18 required a life sentence.

Section 61–11–19 provides that upon receiving such information the court, before expiration of the term during which the person was convicted, shall cause the person to be brought before it and, upon an information filed by the prosecutor, shall require the person to answer if he was the person convicted of the previous felonies as alleged in the information. If he denies that he is or stands mute, a jury is to be impaneled to try the question of identity. If the jury finds that he is the same person or if, "after being duly cautioned", the defendant acknowledges the prior convictions as alleged in the information, the sentence for the last offense is to be enhanced according to the provisions of § 61–11–18.

The terms of the trial courts in West Virginia run for four months, so that in August of 1975 the circuit court of Logan County was nearing the end of its May term.

The court set August 27 as the date for the recidivist proceeding, but defense counsel had a conflict, and the date was rescheduled to September 2, which was still within the May term of the court. Later in August, however, defense counsel moved for a continuance, pleading the need for more time to investigate the truthfulness of the charge in the information that Vance had twice before been convicted of a felony. A continuance until October, as requested by Vance's lawyer, was granted.

In October, Vance was brought again before the court and was confronted with the charges in the information. He stood mute. A jury was convened and from ample evidence found that he was the person who had twice before been convicted as charged in the information. Since there were two prior convictions, the sentence of life imprisonment was imposed upon him for his last conviction of breaking and entering, as required by § 61–11–18. There was no irregularity in the proceedings except that the recidivist "confrontation" and trial occurred after the expiration of the May term of the court and during its September term. The Supreme Court of Appeals of West Virginia has characterized this defect as jurisdictional. *State ex rel. Albright v. Boles*, 149 W.Va. 561, 142 S.E.2d 725 (1965).

Vance took a direct appeal of his conviction and complained of numerous alleged errors, both in the substantive conviction for breaking and entering and in the recidivist proceeding. Among other complaints about the recidivist proceeding, he alleged error because the trial on the recidivist information was not held until after expiration of the term of the court during which he was convicted.

Vance's conviction was affirmed by the Supreme Court of Appeals of West Virginia. *State v. Vance*, 262 S.E.2d 423 (W.Va. 1980). In a written opinion, several of Vance's contentions were discussed extensively, while others were dismissed as unworthy of discussion. There was no mention of Vance's complaint that he was not tried on the recidivist charge before expiration of the circuit court's May term. If the affirmance of the life sentence imposed upon Vance, fifteen years after *Albright*, may be regarded as a holding that the requirement that the defendant be confronted with the charges in the recidivist information before expiration of the term during which he was convicted and required to answer yes or no or to stand mute is waivable, the requirement clearly would not be a jurisdictional one in the sense in which one usually speaks of jurisdiction. The

trouble is we do not know that that is what the justices thought. The "same term" requirement of the statute is clearly applicable to the reading of the information to the defendant and to requiring a responsive plea from him. It is not so clear, however, that the same term requirement applies to any ensuing trial. Vance's exception was only that the trial did not take place during the May term, and the justices may not have noticed that the information had not been read to him until October, immediately before the trial during the September term.

Vance then sought a writ of habeas corpus in the original jurisdiction of the Supreme Court of Appeals of West Virginia. That petition was denied in a formal summary order containing no explanation. The claim that he makes here was clearly made there, and one may speculate about the great likelihood that the justices thought the requirement was waiverable and had been waived. Since the justices said nothing, however, one cannot be certain that the habeas petition was not denied on the basis of some procedural default, despite the fact that the alleged defect was one earlier characterized by that court as jurisdictional. *See State ex rel. Albright v. Boles, supra.*

Finally, Vance sought habeas relief in the United States District Court for the Northern District of West Virginia. That court awarded the writ, feeling bound to do so by *Albright* and by two decisions [1] of this court in which we uncritically accepted the West Virginia court's characterization of the "duly cautioned" requirement of § 61–11–19 as jurisdictional.

The warden then brought this appeal.

## II.

The Supreme Court of Appeals of West Virginia held in *State ex rel. Cox v. Boles,* 146 W.Va. 392, 120 S.E.2d 707 (1961), that the requirement that the defendant be "duly cautioned" was mandatory and that the imposition of an enhanced sentence without having told the defendant of the consequence of his admission of his identity and having informed him of his right to a jury trial was in excess of the court's jurisdiction. This court accepted the state court's characterization of the defect without critical reexamination and federal habeas relief was ordered because of the violation of the statutory due warning requirement. *See Spry v. Boles,* 299 F.2d 332 (4th Cir. 1962).

For its purposes, the courts of West Virginia may characterize such statutory requirements as jurisdictional.[2] Doing so may enhance a state supreme court's capacity to control procedures in the trial courts. *See* Restatement (Second) of Judgments § 14, Comment e Draft No. 5, 1978. How West Virginia characterizes statutory defects, however, has nothing to do with the reach of the federal writ of habeas corpus. The reach of the federal writ is defined by federal law. The dimension of the federal writ is not to be determined by West Virginia's highest court. It can neither be enlarged nor contracted by that court's choice of labels in referring to particular defaults or omissions.

### A.

Historically, the scope of the writ of *habeas corpus ad subjiciendum,* the "Great Writ" of Magna Charta, was quite narrow. Its office was great in affording the protection of the common law courts to persons incarcerated without a judicial commitment. Shored up by later statutes, it was available for the release of persons imprisoned by the King, the Privy Council, or other officials or tribunals. Later, it was adapted to allow the release on bail of persons held on charges of bailable offenses.

---

**1.** *Hooker v. Boles,* 346 F.2d 285 (4th Cir. 1965); *Spry v. Boles,* 299 F.2d 332 (4th Cir. 1962).

**2.** It was wholly unnecessary to the result of *Albright,* of course, to have characterized the defect as jurisdictional. The fact was that no information charging a prior conviction was filed before expiration of the term in which the conviction was obtained, but whether one looks to that or to "confrontation" the imposition of an enhanced sentence was beyond the conditional authorization of the statute, and, in that case, nothing appears to suggest a possible waiver of the statute's time requirements.

Generally, however, it was a sufficient answer to an application for the writ that the person was imprisoned on the authority of a court having jurisdiction.[3] The rule, however, was not without its variants. The writ was held available if the committing court was wholly without power to commit, as was the judge who imprisoned the jurors who acquitted William Penn.[4]

This then was the writ which we in this country inherited. Thus, in this country on an application for a writ of habeas corpus, one could not obtain indirect reconsideration of a conviction though the indictment charged no offense. In *Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 7 L.Ed. 650 (1830) the Court said:

> A judgment, in its nature, concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a Court of record whose jurisdiction is final, is as conclusive on all the world as the judgment of this Court would be .... It puts an end to inquiry concerning the fact, by deciding it .... An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the Court has general jurisdiction of the subject, although it should be erroneous.

*Id.* at 202.

It was repeatedly emphasized that the writ could only question the competency of the committing court and that it could not serve the office of a writ of error. *In re Moran*, 203 U.S. 96, 27 S.Ct. 25, 51 L.Ed. 105 (1906); *Pettibone v. Nichols*, 203 U.S. 192, 27 S.Ct. 111, 51 L.Ed. 148 (1906); *Harkrader v. Wadley*, 172 U.S. 148, 19 S.Ct. 119, 43 L.Ed. 399 (1898); *In re Eckart*, 166 U.S. 481, 17 S.Ct. 638, 41 L.Ed.2d 1085 (1897); *In re Belt*, 159 U.S. 95, 15 S.Ct. 987, 40 L.Ed. 88 (1895); *Andrews v. Swartz*, 156 U.S. 272, 15 S.Ct. 389, 39 L.Ed. 422 (1895); *In re Rahrer*, 140 U.S. 545, 11 S.Ct. 865, 35 L.Ed. 572 (1891); *In re Wood*, 140 U.S. 278, 11 S.Ct. 738, 35 L.Ed. 505 (1891); *Ex parte Parks*, 93 U.S. 18, 23 L.Ed. 787 (1876).

The strict notion of competency, however, had its variants in this country. The notion itself was stressed and strained. Professor Bator has suggested that this Nineteenth Century expansion of the rule occurred because until the last decade of that century there was no provision for direct review in the Supreme Court of most federal criminal cases. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441, 473 (1963). *See also Developments in the Law—Federal Habeas Corpus*, 83 Harv.L.Rev. 1038 (1970).

Illustrative of these expansions of the jurisdictional basis of habeas relief are such cases as *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873) which held that the court was without jurisdiction to impose a second sentence of imprisonment after a first sentence imposing a sentence of imprisonment or a fine had been satisfied by payment of the fine. Judges of the time also thought that a competent court might lose its jurisdiction if its process lost its judicial character. Thus in *Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915), and in *Moore v. Dempsey*, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923), habeas relief was available to question the conviction of one convicted by a jury when the judge and jury were alleged to have been under the coercive influence of a mob and the state's corrective processes were less than were due. While alleged defects in the indictment were never considered grounds for habeas relief, jurisdiction to try a defendant for an infamous crime subject to a sentence of hard labor was thought dependent upon the finding of some indictment by a grand jury, *Ex parte Wilson*, 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89 (1885), and, for a time, it was thought habeas was available to inquire into the constitutionality of the underlying criminal statute. *Ex parte Siebold*, 100 U.S. 371, 25 L.Ed. 717 (1879). This notion was later rejected in *In re Lincoln*, 202 U.S. 178, 26 S.Ct. 602, 50 L.Ed. 984 (1906).

---

**3.** *See generally* 3 W. Blackstone Commentaries * 129–38.

**4.** Bushell's Case, 124 Eng.Rep. 1006 (C.P.1670).

As the middle of the twentieth century approached, there were still further expansions of the writ in other situations in which the judicial process had become unjudicial in a fashion somewhat comparable to *Frank v. Mangum*. In *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), upon an extensive showing of knowing use of perjured testimony by the prosecution, which was uncontroverted by California, it was held that habeas relief should be available. The defendant was remanded to the state courts, however, because the extensive litigation had not included an application to a state court for a writ of habeas corpus. Similarly, in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), habeas relief was held available to a young member of the Marine Corps who, in one day, was arraigned, tried, convicted and sentenced on serious charges brought in an indictment handed down two days earlier of which the defendant was uninformed until his arraignment. He had no lawyer, and there was no offer to provide one. Nor had he had a fair opportunity later to consult a lawyer, to seek a new trial, or to file a notice of appeal, because early on the morning of the second day after his conviction he was removed from the local jail and transported to the penitentiary where he was held in isolation for 16 days.

The court in *Johnson v. Zerbst* spoke in traditional jurisdictional terms. It recognized that the dimensions of the writ had been expanded, but it relied upon the notion, first expressed in *Frank v. Mangum*, that a court with competence to try the matter may lose its jurisdiction during the course of the proceeding.

### B.

In *Waley v. Johnston*, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942), the court for the first time held that habeas relief was available without resort to the traditional jurisdictional concept. The case involved a claim of outrageous coercion of a guilty plea. The court held that the statute authorizing habeas relief had enlarged the limits of the writ to include such a claim if proof of it lay outside of the record and the claim could not have been asserted at the trial.

There followed *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), in which it was held that, subject to procedural roadblocks, the federal writ was available to remedy a deprivation of a federal constitutional right during the course of a criminal proceeding. This notion came into full flower in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). As the absence of direct access to the Supreme Court may have spurred Nineteenth Century efforts to expand the writ, the Supreme Court's incapacity to review a sufficient number of cases to supervise the protection of constitutional rights in criminal proceedings occasioned the tremendous expansion of the writ in the middle of the Twentieth Century as the Supreme Court recognized in *Fay v. Noia*.

### III.

The relatively recent expansion of the writ to provide a corrective process for deprivations of federally protected rights can be of no help to Vance here. There was no unfairness in the proceeding; he suffered no prejudice by the postponement of the confrontation and trial from September 2 to October, a postponement requested by the lawyer in Vance's interest. The lawyer sought the extra time to better prepare himself. The writ then could issue only if there was no jurisdiction to try him on the recidivist charge within the meaning of the cases dealing with the jurisdictional concept. In those cases, the strictness of the competence rule had been relaxed, and it had been held that courts having jurisdiction at the outset could lose it during the course of the proceeding if outrageous performance supplanted normal judicial proceedings, but none of those cases fits this one, for nothing occurred here to upset a calm, objective approach or the fairness of the judge and jury in the recidivist proceeding.

West Virginia's "same term" requirement for recidivist proceedings is comparable to

the time requirements of a speedy trial act or to a statute of limitations. It is different in the sense that the same term requirement is variable. If a trial on the charge is held early in the four-month term, there is little likelihood of encountering any problem in meeting the same term requirement. If the trial occurs late in the term, the limitations period is very short. Defense counsel then, indeed, may need more time to prepare for the recidivist trial and to advise his client about his plea. In fairness to an offender in such a situation, the same term requirement should be subject to waiver, which well may be the view of West Virginia's Supreme Court of Appeals judging from its dispositions of Vance's direct appeal and his petition for habeas corpus.

■ Most of the federal courts that have considered the question have held that time bars to the prosecution or trial of criminal cases, as of civil cases, are affirmative defenses which may be waived. *United States v. Cook*, 84 U.S. (17 Wall.) 168, 21 L.Ed. 538 (1872); *United States v. Wild*, 551 F.2d 418 (D.C.Cir.), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2178, 53 L.Ed.2d 226 (1977); *United States v. Saldana*, 505 F.2d 628 (5th Cir. 1974); *Fowler v. United States*, 391 F.2d 276 (5th Cir. 1968); *United States v. Doyle*, 348 F.2d 715 (2d Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965). *But see Waters v. United States*, 328 F.2d 739 (10th Cir. 1964); *Benes v. United States*, 276 F.2d 99 (6th Cir. 1960). The rule commends itself to us. The policy against the assertion of very stale claims may be so great as to lend some support to a contrary view, but that policy is adequately served by permitting a defendant, who has not expressly waived it, to raise it at or before trial.

■ The recidivist claim here, of course, was in no sense a stale one. It could not have been asserted before the conviction in mid-August. It was promptly asserted, and the confrontation and trial would have occurred before the expiration of the May term but for the fact that defense counsel sought more time for preparation. If time

bars on stale claims went not to the competence of the court but to the remedies, surely this quick same term requirement does not affect the court's jurisdiction to confront and try the defendant on the recidivist charge a few weeks later.

In a somewhat analogous situation, we held that a juvenile was not entitled to federal habeas relief, though she had been sentenced to jail by a Virginia circuit court which had not made the requisite precedent finding of incorrigibility. *Hailey v. Dorsey*, 580 F.2d 112 (4th Cir. 1978), *cert. denied*, 440 U.S. 937, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979). The absence of the finding, we held, did not go to the competence of the court, and, since it was not a fundamental defect occasioning a miscarriage of justice, the omission was beyond the reach of the writ. That is the situation here, and the petition for the writ should not have been granted.

*REVERSED.*